[L. A. No. 2994. Department Two.—February 20, 1913.]

MARY B. N. CLAPP, and E. P. CLAPP, her Husband, Appellants, v. F. S. CHURCHILL et al., Respondents.

BOUNDARIES—AGREED LINE—UNCERTAINTY AS TO TRUE BOUNDARY.—The doctrine of an agreed boundary line and its binding effect upon the conterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves by agreement, fix the boundary line, and that agreement will bind all the consenting parties.

ID.—ACQUIESCENCE IN LINE—UNCERTAINTY AS TO TRUE LINE ESSENTIAL TO AGREEMENT FIXING DIFFERENT LINE.—Acquiescence is merely evidence of the agreement and can properly be considered as evidence of an agreement only when a formal agreement would itself have made a binding contract. But a formal agreement to fix the boundary line is not valid, indeed is void, if the parties know, or one of them knows, that the agreed line is not the true line, or, in other words, if there be not an actual or believed uncertainty as to the true line. This is so because title to real property can be transferred only by descent, devise, conveyance *inter vivos,* or by adverse holding, and to allow parties where their common boundary line is not uncertain or in dispute by a mere agreement to give one title which belongs in another would be the recognition of a mode of transferring title not countenanced by law.

ID.—ESTOPPEL TO QUESTION LINE FIXED BY AGREEMENT.—When such an agreement has been deliberately entered into it is not the theory of the law that there has been a conveyance of any land from the one conterminous owner to the other, but it is that they have agreed between themselves as to the land which they respectively own under circumstances which estop either of them thereafter from denying it.

ID.—INFERENCES ARISING FROM ACQUIESCENCE—INFERENCES OF UNCERTAINTY DISPROVED BY EVIDENCE TO CONTRARY.—The inference of an agreement arising from acquiescence may support the added inference that the inferred agreement was based on a questioned boundary. The primary inference is of a valid pre-existing agreement, and to be valid that agreement must have been based on a doubtful boundary line. This inference of a doubtful boundary will not prevail against the proved fact to the contrary, that there was no question or doubt or dispute between both parties over the boundary.

ID.—ACTION TO DETERMINE BOUNDARY—INSUFFICIENT EVIDENCE OF UNCERTAINTY.—In an action to determine the common boundary line between the lands of conterminous owners, in which the plaintiffs sought to establish a line different from that called for in their deeds, under an agreement between such owners so fixing it, the evidence is held insufficient to show any uncertainty touching the boundary line which would support such an agreement.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. George H. Hutton, Judge.

The facts are stated in the opinion of the court.

W. I. Morrison, and F. G. Cruickshank, for Appellants.

G. A. Gibbs, and Richards & Carrier, for Respondents.

P. A. Bergerot, and A. P. Dessouslavy, *Amici Curiae,* on petition for hearing in Bank.

HENSHAW, J.—This action was brought to determine the common boundary line between plaintiffs' land upon the north and defendants' land upon the south, and to restrain defendants from cutting down and destroying a row of pomegranate trees which plaintiffs assert are upon and define the boundary line. A nonsuit was granted and from the judgment which followed plaintiffs appeal.

The land in controversy is a strip four or five feet wide and 590 feet long. There is no contention that there are any false calls in the deed to the plaintiffs nor that there is any discrepancy between the calls and visible and declared monuments. The deed of the plaintiffs, it is stipulated, is certain in its terms, and running the courses and distances of this deed, the boundary line is fixed four or five feet north of the row of pomegranate trees. Nor is this a case where the litigants hold from a common grantor, or where one, the owner of the whole tract, is the grantor of the other who thus becomes the owner of a portion of the tract. The case is one where plaintiffs to prevail must establish an uncertain boundary line, an agreement between the conterminous owners to fix that boundary line and the fixing of that line by agreement, or must establish their title by adverse possession. The motion for a nonsuit was addressed to the insufficiency of the evidence to show plaintiffs' ownership of the property by either method. Thus, as one of the grounds of the motion, it was urged that no adverse possession for the statutory period with payment of taxes had been proven, and upon the other it was urged "that the plaintiff has not been in possession with improvements of a substantial order for five years; and that there was no dispute shown or uncertainty to make an agreement as to what the boundary line should have been with anybody; and there is no estoppel; and no improvements have been made such as would make it equitable that the plaintiffs should recover."

Upon the matter of adverse possession there is no contention that it was proved by plaintiffs that any title was thus acquired. Whatever may have been plaintiffs' acts of dominion, ownership, and control over the disputed strip, it is un-

questioned that they did not pay the taxes thereon. The whole case, therefore, rests upon the proposition first set forth.

The action was brought in February, 1911. Plaintiffs acquired title to their property in 1905, more than five years prior to the commencement of the action. Title to plaintiffs' property stood in the name of Mary B. N. Clapp. Doctor Clapp, her husband, joined with her as plaintiff, testifies in substance, that in purchasing and entering into possession of the land he took it for granted that the southern boundary line was a row of pomegranate trees with a fence, or the remnants of a fence running through it. The fence was a wire fence supported partly by the pomegranate trees and partly by some two or three old posts. Only parts of the fence were there. He had a new fence put up to keep the boys out. There was a building, "a kind of barn and chicken corral, and a house at the southeast corner of lot 7, the south end was tight up against this hedge." He had it torn down. He always supposed that the pomegranate trees marked his southern line. He had openly occupied all the property up to the hedge. He trimmed the hedge on his side and planted nasturtiums and other flowers upon the strip but they did not grow well because of the hedge. He had built a garage at the southwest corner of the property. No part of the garage proper was upon the disputed strip. Its southern side corresponded exactly with the line of plaintiffs' property as called for in the deed. However, the original steps of the garage were built upon the disputed strip and these original steps were afterward torn down and replaced by new ones upon the same spot. No objection was made by any one to these acts of dominion and control. The witness did not know that the pomegranate hedge was not the true southern line until he had a survey made in accordance with the calls of his deed and found that his line was thus established four or five feet north of the line of pomegranate trees. He did not know that the boundary stakes were there along the true line until shortly before his testimony when he saw them uncovered. This is substantially the testimony to support plaintiffs' case. It is silent upon several important matters. There is no word of testimony that the defendants, or any one of them, believed or declared their northern boundary line to be uncertain. There is no testimony about any agreement

fixing the pomegranate hedge as the accepted boundary line
because of such uncertainty, and the whole case of the plain-
tiffs resolves itself down to this, that plaintiffs did not know
where the boundary line called for by their deed was, but
supposed it to be the pomegranate hedge. There was no un-
certainty even upon the face of the deed. The pomegranate
hedge as the boundary line was a mere assumption upon their
part. Plaintiffs exercised certain acts of dominion and con-
trol over the disputed strip. From the acquiescence by their
silence of the conterminous owners to the south it is argued
that this acquiescence having continued for a period equal
to that required by the statute of limitations gives rise to the
conclusive presumption of previous agreement, or if not to
the conclusive presumption, at least to a presumption which
has not been rebutted by any evidence.

But the doctrine of an agreed boundary line and its binding
effects upon the conterminous owners rests fundamentally
upon the fact that there is, or is believed by all parties to be,
an uncertainty as to the location of the true line. When that
uncertainty exists, or is believed by them to exist, they may
amongst themselves by agreement, fix the boundary line, and
that agreement will bind all the consenting parties. Acquies-
cence is merely evidence of the agreement and can properly
be considered as evidence of an agreement only when a formal
agreement would itself have made a binding contract. But a
formal agreement to fix a boundary line is not valid, indeed
is void, if the parties know, or one of them knows, that the
agreed line is not the true line, or, in other words, if there
be not an actual or believed uncertainty as to the true line.
This is so because under our law title to real property can be
transferred only by descent, devise, conveyance *inter vivos,*
or by adverse holding, and to allow parties where their com-
mon boundary line was not uncertain or in dispute by a mere
agreement to give one title which belongs in another would be
the recognition of a mode of transferring title not counten-
anced by law. (*Lewis* v. *Ogram,* 149 Cal. 506, [117 Am. St.
Rep. 151, 10 L. R. A. (N. S.), 610, 87 Pac. 60] ; *Mann* v. *Mann,*
152 Cal. 23, [91 Pac. 994] ; *Young* v. *Blakeman,* 153 Cal. 477,
[95 Pac. 888] ; *Louslalot* v. *McKeel,* 157 Cal. 634, [108 Pac.
707].) When such an agreement has been deliberately en-
tered into it is not the theory of the law that there has been

a conveyance of any land from the one conterminous owner to the other, but it is simply that they have agreed between themselves as to the land which they respectively own under circumstances which estop either of them thereafter from denying it. This does not mean that the inference of an agreement arising from acquiescence does not support the added inference that the inferred agreement was based on a questioned boundary. The primary inference is of a valid pre-existing agreement and to be valid that agreement must have been based on a doubtful boundary line. But what is meant is that this inference of a doubtful boundary will not prevail against the proved fact to the contrary,—namely, that there was no question or doubt or dispute between both parties over the boundary.

In the case under consideration plaintiff's evidence completely breaks down in its failure to show an uncertainty touching the boundary line which would support such an agreement for, as is said in *Lewis* v. *Ogram:* "such an agreement necessarily is not valid for any other purpose than that of settling an uncertainty in regard to common boundary." Plaintiff shows that he did not know where the true boundary line was until he caused his land to be surveyed when it was easily determined. But his uncertainty was not the defendants' uncertainty, and there is not the slightest evidence that they considered that their northern boundary line was uncertain in its location. Therefore, the acquiescence of the defendants in the acts of the plaintiffs in their exercise of dominion over the strip might make against them for their failure to assert their right, if title were claimed by adverse possession, a claim which has heretofore been said could not, in this instance, be sustained. But it is without meaning or potency under the contention of an agreed boundary line because, as has been said and shown, an agreement fixing a common boundary line can only have efficacy where the true boundary is either uncertain in fact or is believed by the contracting parties to be uncertain.

The witness Doctor Clapp was asked the question: "Will you state what conversation you had with reference to the south boundary line of your property at the time you went into possession there?" He answered, "I did not have a very distinct conversation in the matter, but the boundary line was

indicated to me as the south side of that property, and I had no survey made of it.'' A motion to strike out the answer touching the conversation was made unless it was shown to have been a conversation with the defendants, and the motion was granted. The ruling was proper. The witness does not declare that this conversation was had with the defendants or any of them; he does not declare that the row of pomegranate trees was indicated to him as his boundary line. He had sufficiently indicated his own ignorance of his true boundary line and this evidence would not in the slightest tend to show that the defendants or any of them were in like ignorance.

Again the witness was asked: "State what you claimed as the south boundary line of your property during the time you were in possession?" While an objection to the question was made upon the ground that the evidence was inadmissible unless these claims were shown to have been brought to the knowledge of the defendants, and while the objection was sustained, nevertheless the witness was permitted to answer and did answer freely: "We occupied all of the property up to the hedge openly. . . . Since we came into possession we have occupied it."

A witness testified that he had sowed seeds for Doctor Clapp along the disputed strip, concluding his answer by saying, "and I have supposed that the hedge belonged to Doctor Clapp." The quoted portion of his answer was stricken out on motion. It is asserted that this was error. Clearly the supposition of the witness, even if it be dignified as do appellants by calling it his "opinion" touching the title to the property, was not admissible in evidence.

No other points upon the reception and rejection of evidence are made, and for the reasons given, the judgment and order appealed from are affirmed.

Melvin, J., and Lorigan, J., concurred.

Hearing in Bank denied.