[Civ. No. 18433.   Second Dist., Div. One.   Oct. 25, 1951.]

JOSEPH BLANTON RAST et al., Appellants, v. ADOLPH G. FISCHER et al., Respondents.

Harold N. Nuzum for Appellants.

William H. Keepin for Respondents.

WHITE, P. J.—This is an appeal from a judgment in favor of defendants in an action brought by plaintiffs wherein they sought declaratory relief, damages, a decree establishing a certain line as the true boundary between the property of plaintiffs and the property of defendants, quieting plaintiffs'

title by adverse possession to a triangular strip of land constituting the property in dispute, and enjoining defendants from building so as to encroach upon the asserted true boundary.

Plaintiffs alleged in their complaint that a common boundary line was established in 1924 and was accepted as the true boundary until June, 1948; that plaintiffs and their predecessors in interest had used the disputed land continuously, openly, unquestioned, and adversely to defendants and their predecessors under a claim of right for more than 20 years; that defendants purchased a portion of the lot adjoining plaintiffs' lot on the south, saw the concrete rubble wall which marked the boundary line claimed by plaintiffs, and had notice of plaintiffs' use and possession of the land up to the said wall.

By their answer, in addition to certain denials, defendants alleged that plaintiffs were estopped from showing the true facts by reason of the conduct of plaintiff Joseph Blanton Rast, in that he represented to defendant Adolph G. Fischer, in May, 1949, and while the Fischers' purchase was still in escrow, that the correct boundary line was indicated not by the concrete rubble wall, but by certain survey stakes affixed as the result of surveys made in June, 1948. Defendants further averred that the use of the disputed strip by plaintiffs was not adverse, but with the consent of defendants' predecessors and purely as a neighborly accommodation. By cross-complaint defendants sought to quiet title, removal of an encroaching eave, and damages.

Upon trial before the court, sitting without a jury, findings were made in favor of defendants, finding that plaintiffs' allegations relating to the boundary line, adverse possession and interference with plaintiffs' possession, were untrue; that plaintiffs were estopped; that the line fixed by the two surveys of 1948 is the true boundary; that the eave of plaintiffs' "garage house" constituted an encroachment and nuisance which could be removed without substantial damage and at nominal cost; and that title to the disputed strip should be quieted in defendants. Judgment was entered accordingly.

Appellants contend that the findings of the trial court that there was no "agreed boundary" and no adverse possession by appellants are not supported by the evidence; that the evidence does not support the findings that plaintiffs were estopped; and that it was error to find that plaintiffs' use of the disputed strip was merely permissive. A brief discussion

of the pertinent facts and testimony adduced at the trial will suffice to demonstrate that these contentions are not well founded.

The present dispute concerns the boundary line between Lot 349, the south half of which is owned by plaintiffs, and Lot 348, which adjoins Lot 349 on the south. In 1922 or 1923, Alvin and Elmer Vilmur, predecessors in interest of plaintiffs, purchased the south half of Lot 349 from a Mr. Nidever, who was then the owner of Lot 348. The Vilmurs and Nidever found some stakes which they assumed marked the boundary, and Nidever built a temporary rock wall along the line indicated by the stakes. In 1924 the Vilmurs built a concrete rubble wall along this line. The Vilmurs resided on the premises for about 13 years, after which the property passed to various persons until it was acquired in 1938 by plaintiff Marinda W. Dudley. On June 1, 1939, plaintiff Rast became a joint tenant with Mrs. Dudley, and in October, 1940, he became owner in fee with a life estate reserved in Mrs. Dudley. Lot 348, owned by Mr. Nidever, passed by deed to various persons until, in April, 1948; Carl and Verna Hereford acquired a portion of Lot 348 adjoining plaintiffs' portion of Lot 349 on the south. Mr. Hereford had a survey made in May, 1948, and thereupon the discrepancy between the correct survey line and the rock wall was discovered, it appearing that the true line was 6 inches north of the wall at the west corner and approximately 2.9 feet north of the wall at the east end. Mr. Rast and Mr. Hereford then communicated with each other with a view to an amicable arrangement, Hereford in the meantime proceeding with the erection of a house on Lot 348. The defendants purchased the Hereford property in May, 1949.

█ Taking up first the contention that the court by its findings disregarded the doctrine of "agreed boundaries," the record discloses evidence which if believed by the trial court supports the view that there was no "agreed" boundary, but rather a mistaken acquiescence in what was believed by all concerned to be the true boundary, such belief being based upon the location of the surveyor's stakes found in 1923 or 1924. From the testimony of Alvin M. Vilmur, it appears that when they purchased Lot 349 in 1923 or 1924 they found two stakes; that they checked these stakes with the map "and they looked perfect, and we thought that was the line." "We just had a casual conversation" (with Mr. Nidever, owner of Lot 348) "and agreed that was the property line." "Q. In other words, you both thought that was the true

line? A. From the maps and stakes that were there at that time. Q. In other words, there was no doubt in your mind that wasn't the true property line? A. We had no doubt in our minds that really was the property line." Elmer Vilmur testified that there never was any dispute with Mr. Nidever about the location of the line; that they never intended to occupy any of his property, and only wanted what was theirs according to their deed.

Thus we have at the outset a situation in which there was no disputed boundary, but a mistake as to the true boundary by the parties concerned. As was said in *Pedersen* v. *Reynolds,* 31 Cal.App.2d 18, 28 [87 P.2d 51], quoting from 4 Thompson on Real Property, page 210, section 3115, "An agreement or acquiescence in a wrong boundary when the true boundary is known, or can be ascertained from the deed, is treated both in law and equity as a mistake, and neither party is estopped from claiming the true line."

In *Clapp* v. *Churchill,* 164 Cal. 741, 745 [130 P. 1061], it is stated that the doctrine of an agreed boundary line "rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves by agreement, fix the boundary line, and that agreement will bind all the consenting parties."

The evidence must disclose "a valid pre-existing agreement and to be valid that agreement must have been based on a doubtful boundary line. But what is meant is that this inference of a doubtful boundary will not prevail against the proved fact to the contrary,—namely, that there was no question or doubt or dispute between both parties over the boundary." (*Clapp* v. *Churchill, supra,* p. 746.)

Also in *Huddart* v. *McGirk,* 186 Cal. 386, 388 [199 P. 494], there was testimony that the parties in conversation agreed that a certain ditch was the boundary. The court said: "This is a very different thing from fixing a disputed or doubtful boundary, and if in fact the understanding of the parties as to the location of the true line was in error, they are not bound by their mistaken understanding."

So here, the parties, instead of having a survey according to the descriptions of their deeds, assumed that the stakes found by them denoted the true line and accepted it. In such circumstances their acquiescence is treated as a mistake and neither party is estopped from claiming the true line. (*Peder-*

134

*sen* v. *Reynolds, supra*; *Janke* v. *McMahon,* 21 Cal.App. 781 [133 P. 21] ; *Garrett* v. *Cook,* 89 Cal.App.2d 98 [200 P.2d 21].)

▮ So far as the claim of adverse possession is concerned, the evidence supports the view that the successive owners of the two parcels acquiesced in the mistaken boundary, but that they paid taxes according to the descriptions in their respective deeds.

When, in May, 1949, plaintiff Rast learned that the defendants were purchasing the adjacent property, he went to the office of the real estate agent who negotiated the sale and said that he wanted to "straighten something out that needs it." Thereafter he met Mr. Fischer, who asked Mr. Rast if he was satisfied with the surveys made in 1948, and Mr. Rast said he was, that he had to be, and asked Fischer for an easement to clear the roof of Mr. Rast's garage house. Mr. Rast himself testified that Mr. Fischer asked him if he was satisfied with the line according to the new surveys and Mr. Rast said, "No, but I am satisfied it is a line, because it has been found to be a line by two different surveys."

Further discussion of the testimony or contentions of the appellants would serve no purpose, since it is clear that there was substantial evidence to support the trial court's findings on the issue of agreed boundaries and on the issue of estoppel.

▮ Mr. Rast did not have his lot surveyed until the Herefords commenced the building of their duplex on Lot 348, when he sought to buy Lot 348 or obtain an easement for his garage house roof. His conduct not only affords support to a finding against an agreed boundary and against adverse possession by him, but also supports a finding that he was estopped to assert his claims in that regard against the defendants. He permitted defendants to consummate their purchase and make costly improvements in the belief that he acquiesced in the accuracy of the 1948 surveys. "Whenever a party has, by his own declaration, act, or omission, intentionally and deliberately led another to believe a particular thing true, and to act upon such belief, he cannot, in any litigation arising out of such declaration, act, or omission, be permitted to falsify it." (Code Civ. Proc., § 1962, subd. 3.)

▮ The contention that the court erred in awarding damages of one dollar and ordering the removal of the projecting eaves of the garage house, is without merit in view of our conclusions on the main issues heretofore considered. The evidence supports the finding that the projecting eaves could be removed at slight cost and without substantial damage to

the building. The award of nominal damages was justified "where a breach of duty has caused no appreciable detriment" (Civ. Code, § 3360).

 Consideration of the entire record discloses substantial evidence to support the findings made, and under well settled rules, assuming the existence of contradictory evidence or that opposing inferences might be drawn from the evidence presented, the duty of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or not, which supports the findings. The weight to be given the testimony, the credibility of witnesses, and the inferences to be drawn, were matters for the trier of fact. Upon the record, the findings of the trial court find support in the evidence.

The judgment is affirmed.

Doran, J., and Drapeau, J., concurred.

A petition for a rehearing was denied November 15, 1951.