[Civ. No. 4374. Fourth Dist. Feb. 25, 1952.]

J. A. FALLERT et al., Respondents, v. CLAUDE HAMILTON et al., Appellants.

Fuller & Christenson for Appellants.

Jamison & Jamison for Respondents.

GRIFFIN, J.—Action for ejectment and for damages for claimed wrongful withholding of a strip of land containing approximately 4.6 acres.

Plaintiff J. A. Fallert and wife purchased a tract of land in Tulare County on December 12, 1950, from one Reeves. On the north it adjoined a tract purchased on January 12, 1948, by defendants Claude Hamilton and his wife.

A licensed engineer testified that he was familiar with the various properties involved; that he made a survey of the Reeves property in 1949, and established the north line of it; that in February, 1951, the redwood marker which he had placed there before to establish the line, had been removed but the pipe in which he had set it was still there; that he reestablished the line and reset the stakes; that this line ran about 14 feet north of a barbed wire fence running parallel with this line for a distance of about 626 feet.

Plaintiffs claim that the survey line is the proper division line between the two properties. Defendants claim that the fence line is the proper one because it was erected at least 40 years before the survey was made and became the agreed and accepted division line.

Mr. Reeves testified that the present fence line, which was replaced by defendants after Reeves removed the old fence, followed the same line as the old fence which had been erected on that same line; that the old fence was there when he bought the property in 1943, and that he was not acquainted with the land any time prior to that; that there was no dispute between him and the then owner of the Hamilton property as to the location of the fence; that they both used their respective properties up to the fence without objection or interference by anyone; that he did repair work on it; that he had the property surveyed and it was at that time he discovered the survey line extended 14 feet north of the fence line; that after that time he removed the fence and cultivated the 14-foot strip without objections.

Mr. Fallert testified that when he purchased the property from Reeves there was no fence on the north line; that he plowed, leveled and planted the strip in question; that when he completed the work, Hamilton put up a fence on the former fence line and ordered plaintiffs off of the property just prior to the time of the commencement of this action; that as a result of this he was obliged to extend his pipe line leading from his pump house, around the strip here involved, and across a neighbor's tract, and that the estimated cost to

change it to run across the strip here involved would be about $127, plus $15 or $20 in refencing, plus a leveling charge of $25 to $35; that he had a $200-$300 per ton guarantee or promise for his castor bean crop; that the castor beans ran about two and a half tons per acre; that the year before the net profits ran "over $400 per acre."

Defendants denied by answer the allegations of plaintiffs' complaint, alleged that the fence line had been, for over 40 years, considered by the parties and was agreed to be the common dividing line between said properties. In a cross-complaint defendants prayed that judgment be entered accordingly.

In support of these allegations defendants called a Mr. Dunn as a witness. He testified he had resided on or near the Hamilton property for over 20 years; that the fence was in existence on the present fence line during that time and there was no question ever raised or any dispute ever arose about the fence being any place except on the property line; that power poles were erected along the fence line and that the fence continued westerly "practically in a straight line" with the old fence. He testified that for many years prior to the acquisition of the property by plaintiffs the property was used principally for pasturing cattle.

A Mrs. Murray, who lived on plaintiffs' property for 33 years after 1901, testified there was a fence at the present location during that time; that they kept it up in conjunction with the other owner; that they had cattle and just put up an old fence to hold some of the young cattle; that there was never any survey made of the property as to any line between them and that there was no dispute or controversy as to its location.

Based upon this evidence, the court found that plaintiffs were the owners of the 14-foot strip in question; that while plaintiffs were rightfully in possession of it, defendants, on February 5, 1951, wrongfully entered upon it, ousted and ejected plaintiffs, and accordingly, plaintiffs suffered damage for such ouster in the sum of $307. An additional sum of $160 was allowed for loss of profits, all totaling $467. The court also found that defendants had no right, title or interest in or to said strip and found generally that the allegations pertaining to defendants' claimed defenses were untrue. Judgment was entered accordingly.

Counsel for defendants recognize the limitations placed on the appellate court in passing on the sufficiency of the

evidence to support the findings, where there is a conflict, but content themselves with the proposition that the undisputed facts establish, as a matter of law, that an agreed boundary was established on the location of the old fence separating the respective properties of the parties and that such property line is controlling even though a subsequent survey showed a different location according to the calls of the respective deeds. In support of their contentions they cite *Young* v. *Blakeman,* 153 Cal. 477 [95 P. 888]; *Schwab* v. *Donovan,* 165 Cal. 360 [132 P. 447]; *Mello* v. *Weaver,* 36 Cal.2d 456, 460 [224 P.2d 691]; *Hannah* v. *Pogue,* 23 Cal.2d 849 [147 P.2d 572]; *Roberts* v. *Brae,* 5 Cal.2d 356, 359 [54 P.2d 698]; and *Board of Trustees* v. *Miller,* 54 Cal.App. 102 [201 P. 952].

Defendants' counsel concede, in their brief, that "There is, however, no direct evidence of an agreement between the owners of the coterminous parcels or of a contemporaneous uncertainty or believed uncertainty as to the true location of the dividing line," and state: "The narrow question, then, is whether in the absence of direct evidence, the essential elements of uncertainty as to the true position of the boundary and an agreement to accept a location as fixed by the parties will be implied or presumed under the circumstances evidenced in this case."

In *Southern Counties Gas Co.* v. *Eden,* 118 Cal.App. 582 [5 P.2d 654], the court held, quoting from the syllabus:

". . . an agreement fixing a boundary need not be shown by direct evidence and may be inferred from conduct and especially from long acquiescence. . . ."

And on page 585 the court said: ". . . the mere construction and maintenance of an intervening fence is not sufficient upon which to base a claim of title by agreement." Then the court quotes from *Ross* v. *Burkhard Inv. Co.,* 90 Cal.App. 201, 208 [265 P. 982], where it is said: "It is only when the owners of contiguous tracts of lands . . . are uncertain as to the real boundary line which separates their respective properties, by mutual agreement, either express or implied, consent to accept a specified line as the true boundary, and thenceforth occupy and use their respective properties in accordance therewith for a considerable length of time, that the contracting parties and their privies in title will be estopped from repudiating the agreed boundary. . . ."

It is then stated in the Southern Counties Gas Company case, that:

"A presumption that an agreement formerly was made as to the location of a boundary line may arise from the fact that one or both of the adjoining owners have definitely defined such line by erecting a fence or other monument on it and that both have treated the same as fixing the boundary between them for such length of time that neither ought to be allowed to deny the correctness of its location."

In most of the cases cited by defendants, the appellate court upheld the trial court in its finding that a preexisting marked line constituted the boundary line, as opposed to the contention that another line was the proper one. Accordingly, the cases cited by defendants may be thus distinguished or they are factually different.

In *Clapp* v. *Churchill*, 164 Cal. 741 [130 P. 1061], which case is factually quite similar to the instant case, the court held that the doctrine of an agreed boundary line and its binding effect upon the coterminous owners rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line; that when that uncertainty exists, or is believed by them to exist, they may, amongst themselves by agreement, fix the boundary line, and that agreement will bind all the consenting parties. It then held that the inference of an agreement arising from acquiescence may support the added inference that the inferred agreement was based on a questioned boundary; that the primary inference is of a valid preexisting agreement, and to be valid that agreement must have been based upon a doubtful boundary line; that this inference of a doubtful boundary will not prevail against the proved fact to the contrary.

In the instant case the court found, at least inferentially, that there was no dispute as to the boundary line, and that some of the elements or factors of the doctrine necessary to establish a mutual acquiescence and agreement that a particular line should thereafter constitute the boundary line, had not been sufficiently proved. As opposed to this doctrine it specifically found that the true boundary was that determined by the survey. The necessary elements or factors to be established under the doctrine of agreed boundaries are clearly set forth in *Mello* v. *Weaver, supra*; *Moniz* v. *Peterman*, 220 Cal. 429 [31 P.2d 353]; *Rast* v. *Fischer*, 107 Cal.App.2d 129 [236 P.2d 393]; *Huddart* v. *McGirk*, 186 Cal. 386, 388 [199 P. 494]; *Todd* v. *Wallace*, 25 Cal.App.2d 459 [77 P.2d 877]; *Talmadge* v. *Moore*, 98 Cal.App.2d 481

[220 P.2d 588] ; *Phillips* v. *Hooper*, 43 Cal.App.2d 467 [111 P.2d 22] ; and *Pilibos* v. *Gramas*, 104 Cal.App.2d 353 [231 P.2d 502].

It is not our duty to determine whether the evidence might have supported a finding contrary to the one reached by the trial court. It is our conclusion that it cannot be said, as a matter of law, that an agreed boundary line was conclusively established by the evidence. In view of the inferences and deductions that might be allowed to be drawn from the evidence produced, it cannot be said that there is not sufficient evidence to support the court's finding. ▮ The duty of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or not, which supports the findings. ▮ The weight to be given the testimony, the credibility of witnesses and the inferences to be drawn, are matters for the trier of facts. (*Rast* v. *Fischer, supra.*)

The last point involves the question of the sufficiency of the evidence to support the award of damages as indicated. The argument is that the evidence only shows, at most, a damage of $60, rather than $160, for loss of profits, and a maximum of $182, instead of $307 damages, for withholding the property. Counsel for plaintiffs do not, in their answering brief, consider this question or point to any evidence bearing upon it. Since plaintiffs were precluded from planting more than four acres of castor beans, which in a previous year produced a return of approximately $400 per acre, the trial court might well have believed that the loss of profit was at least equal to the amount here allowed. As to the claimed damage for withholding, we have read the record and, as defendant points out, we find no items of claimed damage which would exceed the sum of $182. The judgment therefore, in this respect, must be and is reduced accordingly.

The portion of the judgment awarding damages is modified and reduced to $342. As thus modified, the judgment is affirmed. Plaintiffs to recover costs on appeal.

Barnard, P. J., and Mussell, J. concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 24, 1952. Traynor, J., and Schauer, J., were of the opinion that the petition should be granted.