[Civ. No. 19738.   Second Dist., Div. Two.   Nov. 13, 1953.]

FRANK PRA et al., Respondents, v. JAMES T.
BRADSHAW et al., Appellants.

Harry G. McMahon for Appellants.

Montgomery G. Rice for Respondents.

MOORE, P. J.—Respondents sued to quiet title to land on which appellants constructed an encroaching brick wall. By the judgment, title was quieted subject to the right and easement of appellants to maintain the wall in its present form, condition, extent and location so long as it remains in existence in its present form, extent and condition, with minor repairs.

Respondents own Lot 39 of Ramona acres which they purchased in 1941. Appellants own Lot 38 which bounds Lot 39 on its north side. They face Nicholson Avenue on the west. Appellants purchased their property in February, 1936. At that time no markers could be found. Appellant fixed the dividing line between the two lots with the assistance of his vendor and one Milam, the reputed owner of Lot 39. This was accomplished by using (1) the fence standing between the rear portions of the two lots, (2) a telephone pole on the east side of the street which fronts the two lots that lie adjacent to the east ends of 38 and 39, and a telephone pole across Nicholson Avenue.

Appellant commenced the construction of the wall in 1939 and by December 22d of that year, 40 feet of it had been built. It was assessed to Lot 38 in 1939 and was so assessed for each succeeding year. It was never assessed to respondents or to Lot 39. In 1949 respondents discovered by means of a survey that the wall encroaches on Lot 39. Prior to such discovery, respondents believed the wall to mark the common boundary of the two contiguous lots.

█ Inasmuch as the boundary was properly described in the deeds of both parties, there had been no dispute as to the boundary prior to the survey. There had been only a mistaken acquiescence in what was believed to be the true boundary. In such situation, appellant asserting the south side of the wall to be the south boundary of Lot 38 and respondents' acquiescing in such assertion, such acquiescence by respondents in a wrong boundary is considered in both law and equity as a mistake and either party is free to claim the true line. (*Rast* v. *Fischer,* 107 Cal.App.2d 129, 133 [236 P.2d 393] ; 4 Thompson on Real Property, p. 210, § 3115. See *Fallert* v. *Hamilton,* 109 Cal.App.2d 399, 402 et seq. [240 P.2d 1007] ; *Lentell* v. *McBride,* 7 Cal.2d 263, 264 [60 P.2d 289].)

In *Rast* v. *Fischer, supra,* where it was found that there had been no agreed boundary ''but rather a mistaken acquiescence in what was believed to be the true boundary'' and the prevailing party had paid taxes on his property as described in his deed, the court said: ''Thus we have at the outset a situation in which there was no disputed boundary, but a mistake as to the true boundary by the parties concerned. As was said in *Pedersen* v. *Reynolds,* 31 Cal.App.2d 18, 28 [87 P.2d 51], quoting from 4 Thompson on Real Property . . . 'An agreement or acquiescence in a wrong boundary when the true boundary is known, or can be ascertained from the deed, is treated both in law and equity as a mistake, and neither party is estopped from claiming the true line.' . . . So here, the parties, instead of having a survey according to the descriptions of their deeds, assumed that the stakes found by them denoted the true line and accepted it. In such circumstances their acquiescence is treated as a mistake and neither party is estopped from claiming the true line. (*Pedersen* v. *Reynolds, supra; Janke* v. *McMahon,* 21 Cal.App. 781 [133 P. 21] ; *Garrett* v. *Cook,* 89 Cal.App.2d 98 [200 P.2d 21].)

''So far as the claim of adverse possession is concerned, the evidence supports the view that the successive owners of the two parcels acquiesced in the mistaken boundary, but that they paid taxes according to the descriptions in their respective deeds.''

No question is made of respondents' ownership of Lot 39 or that they have paid all taxes assessed to it. In view of the finding of such important facts, how can the determination of the trial court be successfully attacked?

## No Title by Limitation

■ Appellants proved that they paid taxes on Lot 38 from 1937 to 1952. They contend that they paid taxes on the strip occupied by the wall which stands on Lot 39. But such contention was not borne out by the evidence. Not a tax receipt in evidence proves that appellants ever paid taxes on any part of Lot 39. While there was proof that the wall was assessed to Lot 38 as an improvement, there was no evidence that the strip of land which the wall occupied was ever so assessed. It appears that the tax assessor committed the same error that the landowners made in assuming that the wall stood on Lot 38. In the absence of such proof, the finding that appellants had not paid taxes on the land occupied by the wall for five years was justified.

■ Likewise, there was no proof of adverse possession. While appellants claimed they had occupied a strip on the north side of Lot 39 from Nicholson Avenue on the west to the rear end of the 273-foot lot, yet there was no proof of such occupancy except the 88 feet on which the wall stands. The wall is not a continuous pile but has had gaps for 12 years. In fact, while 40 feet of the wall had been completed in 1939, the record is silent as to when the remaining 48 feet were constructed. Neither is there proof that it had been held adversely for five years prior to the commencement of the action. Moreover, to be strictly technical, the claim of adverse possession fails in that the wall was never closed.

## No Agreement Fixing Boundary

■ Mr. Bradshaw testified that he had an express oral agreement in June, 1936, with Mr. Milam whereby the common boundary was fixed at a line which now extends along the south side of the wall. Such agreement having been assertedly made 13 years prior to the trial, the court was not obliged to adopt it as true. The frailty of human memory is a fact of universal acceptance. Not only had a long period of years elapsed since the asserted conversation occurred but appellant offered no coroboration thereof. According to Mr. Bradshaw's testimony his conversation with his grantor, McDonald, was in progress when Milam stopped by to see what was going on. At that time there was no dispute as to the location of the line. All three men knew the deeds conveying Lots 38 and 39 contained the correct description of their boundaries and they knew that if they were not clearly marked by stakes on the ground they could be definitely ascertained by the transit and compass. Instead of using those scientific devices

they attempted to fix the common boundary by taking turns at sighting from the telephone pole on the west side of Nicholson Avenue to the pole 600 feet to the east. Fixing an invisible line by sighting around one telephone pole to another is not proof of a zeal to be accurate when dealing with the rights of another. Since the conversation with Milam and McDonald occurred in 1936 and the construction of the wall did not commence until 1939 and inasmuch as instrumentalities were during those three years available for fixing the common boundary line between Lots 38 and 39, it is understandable why the trial court was not enthusiastic over the testimony of appellants and therefore could make no finding that Mr. Bradshaw had an express agreement with Mr. Milam as to the location of the dividing line between the two lots.

When Mr. Milam joined in the conversation, he was not attempting to fix his boundary line. He did not know its location was uncertain; he did not know that his remarks would be used to establish a claim to property. He was approaching his 75th year and was enfeebled by disease. The asserted contract fixing the boundary line between the two lots therefore depended upon faint proof; so faint in fact that the trial court was compelled to find that the proof of the contract had failed.

Judgment affirmed.

McComb, J., and Fox, J., concurred.