[Civ. No. 4986.   Fourth Dist.   Apr. 30, 1956.]

PETER MEACCI et al., Appellants, v. ANNA
KOCHERGEN, Respondent.

L. Kenneth Say for Appellants.

Thompson & Thompson for Respondent.

MUSSELL, J.—This is a quiet title and ejectment action
in which the determination of the boundary line between
adjoining properties is the principal issue involved. Plaintiffs
allege in their complaint that they are the owners of and

entitled to have their title quieted to the east half of the east half of the Southwest Quarter of Section 22, Township 13 South, Range 18 East, Mt. Diablo Base and Meridian, according to the United States Government township plats, in the county of Fresno, State of California (except certain mineral, oil and gas rights therein) and,

"Also except therefrom that portion thereof described as follows:

"Commencing at a point on the South line of the Southwest quarter of said Section 22 which is 440.15 feet Westerly from the quarter corner on the South side of said Section; thence Northerly parallel with the East line of the Southwest quarter of Section 22, a distance of 270 feet to a point; thence Westerly parallel with the South line of said Section a distance of 218.25 feet; thence Southerly parallel with the East line of the Southwest quarter of Section 22 a distance of 270 feet to a point on the South line of said Section which is 658.4 feet Westerly from the quarter section corner on the South side of said section; thence Easterly along the South line of Section 22 a distance of 218.25 feet to the point of commencement."

Defendant Anna Kochergen admits in her answer that plaintiffs are the owners of the property described in the complaint, excepting therefrom a strip of land 46.95 feet wide and 218.25 feet long, extending along the north boundary line and north of the said 270 feet by 218.25 feet exception. Defendant alleged that she was the sole owner of this strip and that any claim of the plaintiffs thereto is without right. No special defenses are set up in the answer and the prayer therein is that defendant have judgment, that plaintiffs take nothing, that defendant recover costs, and for such other and further relief as to the court may seem meet and proper.

The trial court rendered judgment that plaintiffs take nothing by reason of their complaint and plaintiffs appeal from said judgment.

On August 16, 1946, Anna Kochergen and her husband, Alex, deeded to Arpiar Markarian, a married man, the property described in the complaint and on December 29, 1949, Markarian and his wife deeded the same property to the plaintiffs herein. These two deeds, together with a map of the property (defendant's Exhibit A), prepared in 1954 by Karr-Walker, licensed land surveyors, and stipulated by the parties to be a correct engineer's drawing of the subject property, were introduced in evidence, and plaintiffs rested

their case. John A. Kochergen was then called as a witness in behalf of the defendant and testified that he was the son of Anna Kochergen; that he lived on the southwest corner of the property from 1943 to 1947; that there was a chicken house located on the property north of the 270-foot line shown on the map. Photographs (defendant's Exhibits B and C) were shown to the witness and, over objection, he testified that Exhibit B was a picture of an "iron marker, peg" on the northeast corner of the property which was put there by Mr. Ross, a licensed surveyor, while Markarian owned the property; that Exhibit C was a picture of the iron stake at the northwest corner of the property. He was asked to place marks on the map (defendant's Exhibit A) showing the location of these stakes or pipes and placed two red dots on the map north of the 270-foot line of the property described in the exception. He testified that these stakes were put in after the property was deeded to Markarian; that the buildings were on the property when the stakes were put there; and that the chicken house has been on the property since 1946.

Plaintiff Peter Meacci was called as a witness on behalf of the defendants under section 2055 of the Code of Civil Procedure, and, on being asked if he had ever seen the iron stakes shown in Exhibit C, he answered in the negative, and on being shown Exhibit B, stated that he did not know whether it showed a pipe which his surveyor put on the property or not. He testified that he did not live on the property but had farmed it since 1949; that in June, 1954, he got his surveyor to make a survey of the property; that the chicken house was on the property when he bought it and that at one time he saw an old man fixing the chicken house but did not know what he was doing. When asked if he ever complained to Mr. Kochergen or any member of his family or any person about these buildings being on his property before June, 1954, he replied that he "complained to him after he had surveyed it and found that they were on his property."

From this evidence the trial court found that plaintiffs observed defendant and plaintiffs' predecessors in interest making improvements upon the northerly 46.95 feet of said property in dispute and that plaintiffs made no protest as to said improvements and did not assert any claim in or to said property at any time when such improvements were being made; that plaintiffs' predecessors in interest accepted as true the north boundary line of said property, marked by the

surveyor's stakes at a point 316.95 feet from the southerly edge of said property; that at the time the surveyor's stakes were placed at the northwest and northeast corners of said property by the agent of plaintiffs' predecessors in interest, said stakes were so placed to resolve an uncertainty existing with respect to the northerly boundary line of said property and that said boundary line was thereafter accepted by the plaintiffs and their predecessors in interest and by the defendant and her predecessors in interest as the true northerly boundary line of said property.

Appellants contend that the court erred in admitting evidence as to adverse possession and to vary the terms of a written instrument; that the deeds fixed the boundary lines and that there was nothing to be the subject of an implied agreement. Respondent's counsel states in his brief that "Defendant herein did not rely and does not now rely on any element of adverse possession to establish her case in this instance," and at the trial stated his position to the court as follows:

"The Court. Just a minute. What is your position?

"Mr. Thompson. My position is this: We are not pleading adverse rights. We are proving an acquiescence and an implied agreed line establishing the North line of that property under authority of such cases as *Mellow* v. *Weaver*, 36 Cal.2d 456 [224 P.2d 691], which whole line of cases hold that where there is an implied agreement as to a line, you don't have to establish it by adverse position (possession) or any such similar doctrine. You establish it by an acquiescence.

"The Court. And that is provable by quiet title?

"Mr. Thompson. That's right."

In *Mellow* v. *Weaver, supra*, 36 Cal.2d 456, it is held that the requirements of proof necessary to establish a boundary by agreement are well settled; that mere agreement to locate a boundary known to be different from that called for by the deeds is insufficient, since such an agreement would be tantamount to a conveyance by parol, an unrecognized method of transfer of real property; that as early as *Sneed* v. *Osborn*, 25 Cal. 619, where the position of the initial point in the description was uncertain, a division of land between coterminous owners as in accordance with the deed description, and mutual acquiescence in their practical location of the common boundary over a long period of time, was held to constitute the location of the true boundary as called for by the deed; that the agreement need not be express, but

may be implied from long acquiescence, but since it is valid only for the purpose of settling an uncertainty in a common boundary, the implied agreement must have been based on a doubtful boundary line; that a doubt may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances surrounding the parties at the time when the agreement is deemed to have been made; and if in good faith the parties resolve their doubt by the practical location of the common boundary it will be considered the boundary called for by the deed.

In the instant case there is no evidence of an agreement to locate the north boundary line of the property described in the exception as being at a point 46.95 feet north of the north line shown in the deeds. There is no evidence that the stakes or pipes shown in the photographs (Defendant's Exhibits B and C) were in fact 46.95 feet north of the north line shown in the deeds and no evidence that the defendant ever discussed the question of the boundary line with the plaintiffs or with Arpiar Markarian. While the witness John Kochergen testified that Markarian put the stakes shown in the photographs on the property, there is no testimony that he agreed to the establishment of a boundary line other than that called for in his deed. Markarian and the defendant Anna Kochergen were not called as witnesses and there was no testimony of an agreement, express or implied, that they agreed to a different boundary line than shown in the deeds. It clearly appears that there was no uncertainty in the description in the two deeds and that the boundary line between the two properties was readily ascertainable by reference thereto. While there was testimony that plaintiff Peter Meacci at one time saw an old man fixing the chicken house, the record is silent as to when this occurred and it does not appear that the parties ever discussed the improvements on the property or the right to make them. Plaintiffs obtained their property by the deed of December 29, 1949, and Meacci testified that he saw one building on the property but never discussed the building with anyone until after June, 1954, when he caused a survey to be made by Karr-Walker, licensed surveyors.

Defendant's position that the north boundary line of the property described in the exception was fixed by the stakes put there by surveyor Ross and acquiesced in by plaintiffs is not supported by the evidence. In *Pra* v. *Bradshaw*, 121 Cal.App.2d 267, 269 [263 P.2d 52], the court said:

"Inasmuch as the boundary was properly described in the deeds of both parties, there had been no dispute as to the boundary prior to the survey. There had been only a mistaken acquiescence in what was believed to be the true boundary. In such situation, appellant asserting the south side of the wall to be the south boundary of Lot 38 and respondents' acquiescing in such assertion, such acquiescence by respondents in a wrong boundary is considered in both law and equity as a mistake and either party is free to claim the true line. (*Rast* v. *Fisher,* 107 Cal.App.2d 129, 133 [236 P.2d 393] ; 4 Thompson on Real Property, p. 210, sec. 3115. See *Fallert* v. *Hamilton,* 109 Cal.App.2d 399, 402 et seq. [240 P.2d 1007] ; *Lentell* v. *McBride,* 7 Cal.2d 263, 264 [60 P.2d 289].)

"In *Rast* v. *Fischer, supra,* where it was found that there had been no agreed boundary 'but rather a mistaken acquiescence in what was believed to be the true boundary' and the prevailing party had paid taxes on his property as described in his deed, the court said: 'Thus we have at the outset a situation in which there was no disputed boundary, but a mistake as to the true boundary by the parties concerned. As was said in *Pedersen* v. *Reynolds,* 31 Cal.App. 2d 18, 28 [87 P.2d 51], quoting from 4 Thompson on Real Property . . . "An agreement or acquiescence in a wrong boundary when the true boundary is known, or can be ascertained from the deed, is treated both in law and equity as a mistake, and neither party is estopped from claiming the true line." ' So here, the parties, instead of having a survey according to the descriptions of their deeds, assumed that the stakes found by them denoted the true line and accepted it. In such circumstances their acquiescence is treated as a mistake and neither party is estopped from claiming the true line. (*Pedersen* v. *Reynolds, supra*; *Janke* v. *McMahon,* 21 Cal.App. 781 [133 P. 21] ; *Garrett* v. *Cook,* 89 Cal.App.2d 98 [200 P.2d 21].)"

In the instant case apparently there was no dispute as to the boundary line until plaintiffs had the property surveyed in 1954. They then filed their action to quiet title on June 25th of that year. The record shows that plaintiffs made no effort to establish the line until the filing of the action. While the evidence shows that stakes were put in by surveyor Ross, there is no evidence that plaintiffs assume that these stakes denoted the true boundary line.

The rule that coterminous owners may by agreement,

implied from acquiescence, establish and fix their mutual boundary line, is applicable only where the true line is otherwise unknown or uncertain. ██ The boundary is considered definite and certain when by survey it can be made certain from the deed, and a requisite to make applicable the doctrine of agreed boundary line is that the line acquiesced in by adjoining property owners must be specific, definite and certain. (*Williams* v. *Barnett,* 135 Cal.App.2d 607, 612 [287 P.2d 789].) ██ In the instant case there was no uncertainty as to the true boundary line. The true boundary line was readily ascertainable from the survey made, and the line sought to be established by the defendant was not certain. We conclude that, under the circumstances shown, plaintiffs were free to claim the true boundary line as shown in their deed.

The judgment is reversed.

Barnard, P. J., and Griffin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied June 27, 1956.