[Civ. No. 13371. Third Dist. Oct. 10, 1972.]

VAN BUREN ZACHERY, JR., et al., Plaintiffs and Respondents, v. JACK McWILLIAMS et al., Defendants and Appellants.

COUNSEL

Wilfrid J. Bedworth for Defendants and Appellants.

Vizzard, Baker, Sullivan, McFarland & Long, James Vizzard and Allan H. McFarland for Plaintiffs and Respondents.

OPINION

FRIEDMAN, Acting P. J. — Mr. and Mrs. Zachery, the plaintiffs, own section 28 of a township located in a rugged mountainous area of Kern County. Immediately to the west is section 29, owned by defendant

McWilliams.[1] In this suit the parties litigate the location of the common boundary of these sections, that is, the west boundary of section 28 and east boundary of section 29. The trial court found that the parties' predecessors had established an agreed boundary about 1,300 feet west of the section line established by an 1876 government survey. The court granted a decree quieting plaintiffs' title to approximately 160 acres west of the section line. The court also awarded plaintiffs trespass damages of $1,468.20. Defendants appeal.

The map of the 1876 survey shows that the sections are square and each contains 640 acres. Plaintiffs bought section 28 in 1951. At that time they believed their westerly boundary corresponded to a fence which ran southward from the north boundary of the section, extending about two-thirds of the way toward the south boundary. Plaintiffs later extended the fence to what they believed was their southwest corner.

McWilliams bought section 29 in 1969 or 1970. He had a survey performed by Whitlock, a land surveyor. At the easterly corners of section 28 Whitlock found monuments which, according to the 1876 field notes, seemed to mark the true easterly line of section 28. He could not find monuments marking the common corners of sections 28 and 29, nor those marking the western corners of section 29. By reference to the monuments at the easterly corners of section 28, Whitlock located what he regarded as the true line marking the common boundary. Located "approximately a quarter of a mile into Section 29" was the fence. He found some blazed trees at both ends of the fence lines, including a blazed oak at the south end. According to Whitlock, these blazes did not match those described in the 1876 field notes; the blazed oak was at most 30 years old. The fence appeared to be 20 or 30 years old.

Relying on Whitlock's survey, defendant McWilliams had some bull-dozing work done in the area easterly of the fence. A portion of the fence was torn down. This suit followed.

After considering the evidence, the trial court found that the fence line marked the common boundary; that the predecessors of the present owners had for 30 years accepted monuments at the north end of the fence line and for 37 years had accepted monuments at the south end of the fence line as marking the common corners of the two sections; that said predecessors "did not have exact and certain knowledge of the boundary between said sections as determined by any survey, and were in doubt as to the

---

[1]Possibly defendant Hartford Mortgage and Investment Company has an interest in section 29. This point will be discussed *infra*.

exact location of said boundary, and did agree and acquiesce that the said boundary was properly determined by the westerly fence of said purported Section 28 constructed by plaintiffs more than 17 years prior to the filing of suit herein."

Defendants charge that these findings lack evidentiary support in that there is no evidence of any uncertainty or dispute concerning the true boundary. The function of the reviewing court is to determine whether there is any substantial evidence to support the findings; it may not substitute its own deductions for reasonable inferences drawn by the trial court. (*Green Trees Enterprises, Inc.* v. *Palm Springs Alpine Estates, Inc.,* 66 Cal.2d 782, 784-785 [59 Cal.Rptr. 141, 427 P.2d 805].)

■ ■ The applicable legal doctrine is summarized in *Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, 707-708 [336 P.2d 525]: "The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. [Citations.] The doctrine requires that there be an uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position. It is not required that the true location be absolutely unascertainable [citation]; that an accurate survey from the calls in the deed is possible [citation], or that the uncertainty should appear from the deeds [citation]. The line may be founded on a mistake. [Citation.]

"The court may infer that there was an agreement between the coterminous owners ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between their lands. [Citation.]"

On the assumption that the line drawn by Whitlock represents the true section line,[2] it is apparent that the fence line 1,300 feet to the west was established as the result of a mistaken assumption as to the location of that section line on the part of William Pinkney, former owner of section 28. Zachery had bought section 28 from Pinkney in 1951. Pinkney told Zachery that he had commenced the fence at the northwest corner of section 28 after "he had had it surveyed and checked." He showed Zachery a witness tree which indicated the southwest corner of the section. Later, in 1956, Zachery found survey stakes at the northwest and southwest corners. Zachery extended the fence southward to the south line of the section.

---

[2]Whitlock's location was disputed by two surveyors who testified for plaintiffs. Both testified that the fence line corresponded to the section boundary laid out in 1876. The trial judge expressed the view in his notice of intended decision that Whitlock's line represented the true section line but made no findings to that effect.

Mr. Ming, the predecessor of defendant, had purchased section 29 in 1964. Ming testified that a representative of the preceding owner showed him a blazed oak tree and a stake marking the southeast corner of section 29 (i.e., the southwest corner of section 28). Ming accepted the fence as the eastern boundary of section 29.

Defendant McWilliams testified that when he was buying the property, Ming showed him the fence line as its boundary.

Raymond Hart testified. He had been foreman for Charles Condon, a prior owner of section 29. Hart moved to the area in 1932. At that time Pinkney's fence had already been installed. The trial court could reasonably infer from Hart's testimony that Condon, Hart's employer, bought and held section 29 in the belief that the line represented by Pinkney's fence represented the true boundary. The testimony of Ming and Hart constitutes substantial evidence to support the trial court's finding of acquiescence on the part of McWilliams' predecessors.

In summary, the evidence reveals Pinkney's ignorance of the section line's actual location; his mistaken reliance on some blazed trees and stakes as monuments which marked the common corners of the two sections; his construction of a fence along the north-south line indicated by these markings; and several decades of subsequent acquiescence by the owners of both properties in the assumed boundary indicated by this fence.

At this point the parties select somewhat inconsistent pronouncements from California decisions. The apparent lack of harmony among the cases is described in a Comment in 11 Stanford Law Review 720. Defendants rely on cases exemplified by *Pra* v. *Bradshaw,* 121 Cal.App.2d 267, 269 [263 P.2d 52], holding that mistaken acquiescence in what was believed to be the true boundary line does not establish an agreed boundary and does not prevent either party from claiming the true line. (See also, *Meacci* v. *Kochergen,* 141 Cal.App.2d 207, 211 [296 P.2d 573]; *Rast* v. *Fischer,* 107 Cal.App.2d 129, 133 [236 P.2d 393]; *Kraus* v. *Griswold,* 232 Cal. App.2d 698, 711 [43 Cal.Rptr. 139].) Plaintiffs, on the other hand, rely on authorities holding that long acquiescence in a boundary founded on a mistake is a sufficient basis for a finding of agreed boundary.

In our view the predominant and authoritative case law supports plaintiffs' position. As stated in *Ernie* v. *Trinity Lutheran Church, supra,* the line may be founded on a mistake. (51 Cal.2d at p. 708.) In *Mello* v. *Weaver,* 36 Cal.2d 456, 460 [224 P.2d 691], the court declares that the agreement may be implied from long acquiescence; a dispute or contro-

versy is not essential; the fact that an accurate survey is possible is not conclusive of the question whether a doubt existed; the doubt may arise from a believed uncertainty proved either directly or inferred from the circumstances. The *Mello* opinion quotes with approval from *Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15, 19 [200 P. 651]: " 'The belief of the parties for the long period of thirty years following the location, as shown by the findings, is a sufficient reason for the application of the doctrine, so far as that state of mind [i.e., uncertainty] is essential thereto. The fact that it was founded on a mistake always appears, and must appear, else there would be no occasion to invoke the doctrine.' "

The requirement of uncertainty is aimed at preventing a boundary shift by oral agreement or acquiescence where the parties have actual knowledge of the true line. Thus the opinion in *Clapp* v. *Churchill,* 164 Cal. 741, 746 [130 P. 1061], states: "The primary inference [drawn from long acquiescence] is of a valid pre-existing agreement and to be valid that agreement must have been based on a doubtful boundary line. But what is meant is that this inference of a doubtful boundary will not prevail against the proved fact to the contrary,—namely, that there was no question or doubt or dispute between both parties over the boundary."

■ In this case there is no evidence that the prior owners knew the location of the section line established in 1876. In the absence of such knowledge, the trial court could reasonably infer a state of uncertainty which led them to reliance upon such ephemeral boundary markings as were available and to further reliance as a true boundary on a fence line based on such markings. There was evidence of acquiescence in the fence line since the 1930s. The finding of an agreed boundary is supported by substantial evidence.

The trial court's finding of adverse possession was erroneous. ■ The doctrine of agreed boundary is incompatible with the requirement of hostility necessary to establish title by adverse possession. (*Kraus* v. *Griswold, supra,* 232 Cal.App.2d at pp. 709-710; *Janes* v. *LeDeit,* 228 Cal. App.2d 474, 488-489 [39 Cal.Rptr. 559].) The judgment quieting plaintiff's title to the disputed strip is sufficiently supported by the finding of an agreed boundary. Hence, invalidity of the adverse possession finding does not affect the judgment.

Defendants argue that there is no substantial evidence to support the findings against Hartford Mortgage and Investment Company, a corporation. The record at this point is quite empty. The burden of proof was on plaintiffs to establish the interest, if any, of the corporation and its participation, if any. Plaintiffs failed to do so. On appeal plaintiffs belatedly

seek refuge in a lamely worded courtroom stipulation that "defendant at present is owner of Section 29 . . . ." We have no way of inferring whether the stipulation referred to McWilliams alone or to the corporation alone. It certainly did not refer to more than one defendant. There is no evidence that the corporation is an *alter ego*. The judgment as to the corporation will be reversed and the parties may have a new trial on the question of its interest in the property and its liability for trespass.

The judgment is affirmed as to defendant McWilliams. It is reversed as to defendant Hartford Mortgage and Investment Company. Defendant McWilliams will bear costs of appeal.

Regan, J., and Pierce, J.,* concurred.

Respondents' petition for a hearing by the Supreme Court was denied December 13, 1972.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.