[Civ. No. 5799.   Fourth Dist.   Jan. 15, 1959.]

CLAYTON BALL et al., Appellants, v. THOMAS BRIDGES HARDER et al., Respondents.

Frank Aspinwall for Appellants.

Robert Ritchie, Knauf, Henry & Farrell and Kenneth R. Henry for Respondents.

MUSSELL, Acting P. J.—This is an action involving a boundary line dispute between owners of real property in Lots 181 and 188, Etiwanda Vineyards Tract, in the Township of Fontana, San Bernardino County.

It is alleged by appellants in their first amended complaint that they are owners of the west one-half of the east one-half of each of said lots; that respondents are the alleged owners and in possession of property adjacent to the west side of the appellants' property; that prior to September 21, 1955, re-

spondents placed and maintained a large board fence, running in a northerly and southerly direction along and upon the west side of appellants' property and extending inside of it approximately 13.75 feet; that appellants had demanded that respondents remove said fence and that they refused to do so. The prayer of the complaint was that appellants have judgment for the encroachment and trespass on their property, for damages, and that respondents be required to remove said fence.

Respondents, in their answer, admitted ownership of the property adjacent to the west of that of appellants'; admitted placing and maintaining the fence; admitted a demand was made for its removal, and that they had refused to comply with said demand. In addition to their answer, respondents filed a cross-complaint in which they alleged that they were the owners of the west one-half of said Lots 181 and 188; that appellants claimed an interest therein adverse to respondents and had unlawfully erected a fence upon the east side of respondents' west one-half of Lot 181; that appellants were unlawfully in possession of a 13-foot strip of respondents' property on the east side of their west one-half of said Lot 181; and that appellants had refused to give up said strip, although requested to do so. Respondents prayed for judgment quieting title, for removal of appellants' fence, and for damages.

It is admitted by the parties hereto that the record title of the west one-half of the east one-half of Lots 181 and 188 is in appellants and that the title to the west one-half of Lots 181 and 188 is in the respondents; that the respondents have erected a fence along what they claim to be the east boundary line of their west one-half of lot 188; that appellants have erected a fence along what they claim to be the boundary line dividing the east and west halves of Lot 181; that appellants claim that the fence on Lot 188 is approximately 14 feet east of the true boundary line; that respondents claim that the fence on Lot 181, which is directly to the north of Lot 188, is approximately 13 feet west of the true boundary line and that the respondents' fence on Lot 188 is 13.75 feet west of the true survey line.

The principal question involved herein is whether the fence erected by respondents on Lot 188 and the northerly extension of the line thereof through Lot 181 constituted the agreed boundary line.

Respondents have been the owners of and in possession of

the west one-half of said Lots 188 and 181 since May, 1946. In that year these lots were unimproved and there were no markers of any kind thereon with respect to the east boundary line of the west one-half of said lots. Respondents did not have their property surveyed before they bought it and in 1946 and early 1947 they were not certain as to the location of the east boundary line of their property. In the early summer of 1947 they established what they determined to be the east boundary line by measuring 330 feet easterly from the center of the first street west of their property. On this line they dug post holes and erected a board fence. In 1947 the property to the east of that of respondents' was owned by Carl T. Hogan and Alva Marks and when Harder and Babcock were digging holes for the fence posts and building a fence, Hogan and Marks were present. Thomas Harder testified in this connection that Hogan wanted an explanation of what they were doing and they told him what they had done and informed him as to the measurements taken; that he (Hogan) looked at the stakes to satisfy himself that they were right; that Hogan then said, ''Everything lines up, so I think we are all right,'' and ''Well, looks all right to me,'' or words to that effect.

Hogan testified that he walked out to the border line at the property line where they were beginning the fence; that he asked Harder what was going on and Harder said they were building a fence; that he (Hogan) said ''Are you in the right spot?'' and Harder replied that he thought so; that Hogan checked and, as far as he could see, Harder was in the right spot; that neither he nor Hendrickson (husband of Alva Marks) objected to the location of the fence then or at any other time.

Respondents occupied the property up to this fence from the time it was built in 1947 and all the predecessors in interest of appellants Ball and the successors in interest of Hogan and Hendrickson accepted such fence as the true boundary line.

In 1949 or 1950 a Mr. Gribble extended the fence northerly on Lot 181. George Pavlick, the immediate predecessor in interest of appellants, considered the fence built by Harder to be the true boundary line, and the first time it was questioned was after Pavlick had opened an escrow for the sale of his property to appellants Ball in 1953.

The trial court found that the true east boundary line of the west halves of Lots 181 and 188 was fixed by agreement between the respondents and the predecessors in interest of

appellants more than five years before appellants acquired title to the east halves of said lots; that with reference to Lot 188, the true boundary line between the east and west halves thereof is marked upon the ground by the wooden fence erected by respondents and, with reference to Lot 181, the true boundary line is a prolongation of said fence; and that said boundary line is a distance of 343.38 feet east from the center of Lime Avenue, as said center is shown on the record of survey of Etiwanda Vineyards Tract, Map Book 17, page 29, San Bernardino County records. Judgment was rendered in favor of defendants and cross-complainants and plaintiffs and cross-defendants were ordered to remove the fence which they had erected on the east side of the west one-half of Lot 181.

In *Nutting* v. *Hulbert & Muffly, Inc.*, 155 Cal.App.2d 464, 468 [317 P.2d 1007], the court said:

" 'When owners of adjoining lands have acquiesced for a considerable time, at least equal to the period prescribed by the statute of limitations, in the location of a division line between their lands, although it may not be the true line according to the calls of their deeds, they are thereafter precluded from saying it is not the true line.' (*Martin* v. *Lopes*, 28 Cal.2d 618, 622 [170 P.2d 881], citing *Sneed* v. *Osborn*, 25 Cal. 619, 627.)    Further, in *Martin* v. *Lopes, supra,* the statement is made that in order to invoke the doctrine of agreed boundaries all that need be shown is lack of knowledge by both parties where the fence line should be drawn.

"The fact that an accurate survey is possible is not conclusive of the question of whether a doubt exists as to the location of the boundary. The doubt may arise from the believed uncertainty which may be inferred from the circumstances surrounding the parties at the time the agreement was deemed to have been made and if, in good faith, the parties resolve their doubt by fixing the location of the common boundary it will be considered the boundary called for in the deed. (*Mello* v. *Weaver*, 36 Cal.2d 456 [224 P.2d 691]; *Madera School Dist.* v. *Maggiorini*, 146 Cal.App.2d 390 [303 P.2d 803].)"

In *Mello* v. *Weaver*, 36 Cal.2d 456, 460 [224 P.2d 691], it is held that an agreement to locate a boundary line need not be express, but it may be implied from long acquiescence; that the implied agreement must have been based on a doubtful boundary line; that a dispute or controversy is not essential but it may be evidence of the existence of a doubt or uncertainty; that it is not required that the uncertainty

should appear from the deed or from an attempt to make an accurate survey from the calls of the deed; that a doubt may arise from a believed uncertainty which may be proved by direct evidence or inferred from the circumstances surrounding the parties at the time when the agreement is deemed to have been made, and if in good faith the parties resolve their doubt by the practical location of the common boundary, it will be considered the boundary called for by the deed.

In *York* v. *Horn*, 154 Cal.App.2d 209, 212 [315 P.2d 912], the court said: ''The fact that an accurate survey is possible is not conclusive of the question of whether a doubt exists as to the location of the boundary.''

We conclude that, under the rules stated in the cases cited herein, there is sufficient substantial evidence to establish that there was an uncertainty as to the true position of the boundary line herein; that there was an agreement to establish such a common boundary line; that a fence was built up to the agreed boundary; that respondents occupied their real property to such line and that the parties acquiesced in the boundary line thus established for a period equal to the statute of limitations.

Judgment affirmed.

Shepard, J., concurred.