[Civ. No. 6550. Fourth Dist. Jan. 25, 1962.]

DALE D. KIRKEGAARD et al., Plaintiffs and Respondents, v. RICHARD G. McLAIN et al., Defendants and Appellants.

Lerrigo, Thuesen, Thompson & Thompson and Maurice A. Smith for Defendants and Appellants.

Jensen & Hahesy and J. E. Hahesy for Plaintiffs and Respondents.

GRIFFIN, P. J.—Plaintiff-respondent Dale D. Kirkegaard and his wife brought this action against defendant-appellant Richard G. McLain and his wife to quiet title to a pie-shaped piece of property along the boundary line between their properties. The parties own adjacent lots in a new subdivision near Fresno State College. The lots were marked by survey stakes, both front and rear, by the subdivider. Defendants' corner lot was pie-shaped, or rhomboid in shape, since the streets do not intersect at right angles.

Plaintiff purchased a lot (number 177) and built a house on it in the spring of 1958. No house had been built on defendants' lot (number 176) at that time. Later there was a house erected and the parties discussed the idea of building a fence on the line separating their lots. Defendant McLain initiated the discussion and it was agreed that they would

both join in building a fence and share the costs. Lumber was ordered. Both plaintiffs and both defendants were present at a later conversation. Mr. Kirkegaard testified that Mr. Mc-Lain showed him a cord he had strung between the houses on what he thought was the boundary and asked if Kirkegaard agreed; that he (Kirkegaard) looked at it and saw that it was about equidistant between the two houses and it looked all right to him so they proceeded to build the fence; that his wife did mention that several people had suggested they should have a survey made before constructing the fence but since they had established the line it was agreed that it would not be necessary to undergo that expense; that he never attempted to determine the line himself and never looked for the survey stakes in the front or the rear; that there never was any dispute or argument as to where the boundary line should be and that they accepted this line as the boundary line.

Mrs. Kirkegaard testified that McLain strung the cord; that she and her husband looked at the contemplated dividing line; that McLain asked "Is this all right with you?" and "we said 'yes' "; that she did say her friends suggested a survey, but McLain wanted the fence started right away, so it seemed silly to go to that expense.

McLain testified that he and plaintiff Kirkegaard found two iron stakes, one at the front and one at the rear of the lot, about one week before they started building the fence; that one day after they started it Mrs. Kirkegaard came out and objected to the fence and wanted him to move it back 25 feet because it would hide the front of her home, and that they did so; that after the completion of the fence, and in August 1959, a neighbor and his surveyor were out checking his property line and they came upon a stake hidden in some debris, and they came over and told him he had made a mistake in building the fence on the line he marked with the cord; that he then saw the newly discovered stake and had a survey made which indicated that that was the proper line leading from the front stake to the one uncovered. There was a difference of about 20 feet between the stake found and the one where the cord was tied by him. He then testified that he went to plaintiff Kirkegaard and told him about it; that he told him he was not positive about it until he checked the maps; that he then offered, if this was the case, to move the fence and move, at his own expense, a children's play-slide and sand area that plaintiff Kirkegaard had put upon the property; that at that time Mr. Kirkegaard told him that that was

his property and to get off of it; that later he talked to him again and offered to split the land with him and he (Kirkegaard) ran him off the property; that he then offered to sell the disputed area to plaintiff and that plaintiff offered to give him some money just to settle the dispute but no agreement was reached in this respect.

The matter stood in that status until April 1960, when defendant started removing the fence, etc. This action was then filed and a restraining order was issued.

Plaintiffs alleged in their complaint that the boundary line was fixed by agreement and acquiescence and that defendants were estopped from denying it under equitable principles since some improvements had been made on the disputed property in the sum of $600.

Defendants filed an answer and cross-complaint denying generally the allegations of the complaint and specifically denying that plaintiffs ever erected any permanent improvements on the disputed property and alleged that if the area of defendants' property is reduced from 9,000 to 8,700 square feet by reason of the mutual mistake of the parties, they would be violating a city planning ordinance requiring 9,000 square feet in area for a residence lot and that the holder of a trust deed on his property would lose a goodly portion of its security if this portion were taken from him; that cross-defendants forcibly withheld said property from them and title thereto is claimed by cross-complainants.

The improvements placed upon the disputed area consist generally of lawn, a sprinkler system, sand area, play equipment, iron fencing, landscaping, various trees and some concrete work.

On this evidence, the court found that on April 25, 1958, the parties, being uncertain of the true boundary line dividing their respective lots, agreed upon a boundary line dividing them and jointly erected a fence along the agreed boundary line and in reliance thereon plaintiffs erected substantial and valuable improvements and defendants caused damage thereto in the sum of $50. The court then found against cross-complainants and that plaintiffs are the owners of the disputed strip.

It is a general rule that the period of acquiescence in the agreed boundary must be equal to the period of the statute of limitations (*Silva* v. *Azevedo,* 178 Cal. 495 [173 P. 929]), but such rule is not without its exceptions (*Young* v. *Blakeman,* 153 Cal. 477 [95 P. 888]).

"Hence it is now well established that where adjoining owners have agreed upon the true position of their boundary line, built up to it or otherwise so improved their property that substantial loss would result if the agreed boundary line were subsequently changed . . . and regardless of its accuracy as may appear by subsequent measurements, such line becomes the true line called for by the respective descriptions. (*Howatt* v. *Humboldt Milling Co.*, 61 Cal.App. 333 [214 P. 1009].)" (*Needham* v. *Collamer*, 94 Cal.App.2d 609, 611-612 [211 P.2d 308].)

If the evidence supports the finding that there was an agreed boundary and that there was an uncertainty in respect to it within the technical meaning of that term, then the judgment of the trial court could be affirmed under the exception relating to estoppel. (*Kofl* v. *Dunn*, 176 Cal.App.2d 204, 209 [1 Cal.Rptr. 278] ; *Spear* v. *Smith*, 161 Cal.App.2d 744, 748 [327 P.2d 36] ; *Shelton* v. *Malette*, 144 Cal.App.2d 370, 374 [301 P.2d 18] ; *Needham* v. *Collamer, supra,* 94 Cal.App.2d 609, 611; *Ernie* v. *Trinity Lutheran Church*, 51 Cal.2d 702, 707 [336 P.2d 525] ; *Muchenberger* v. *City of Santa Monica,* 206 Cal. 635, 642 [275 P. 803] ; *Lusk* v. *Krejci*, 187 Cal.App.2d 553, 556 [9 Cal.Rptr. 703].)

It is defendants' claim that plaintiffs confused "agreed boundaries" and "boundaries by acquiescence," and used the terms interchangeably in their brief, as do some textbooks; that an agreed boundary is quite different from a boundary by acquiescence; that an agreed boundary could be more accurately described as a compromise boundary, or one where there is a dispute or doubt, and a compromise of the positions or claims of the parties is arrived at; that there is no material conflict in the evidence here as to the terms of the agreement and that all it amounts to is a mutual mistake of the parties as to the location of the true line, and accordingly their acquiescence is treated as a mistake and neither party is estopped from claiming the true line. The evidence produced is susceptible of this construction and we find none indicating that prior to the claimed agreement there was ever any *dispute* between them as to the proper line or that either party contended otherwise. In fact, the plaintiffs stated that there was no dispute between them in reference to the property line. They both proceeded under the mistaken belief that the stake selected was the proper corner stake for their properties until it was discovered that the proper stake was some 20 feet distant from it. There is respectable authority, written by Jus-

tice White, with hearing denied by the Supreme Court, holding in *Rast* v. *Fischer* (1951) 107 Cal.App.2d 129 [236 P.2d 393], that where adjoining landowners, instead of having a survey according to the descriptions of their deeds, assume that stakes found by them denote the true line and accept it, their acquiescence is treated as a mistake and neither of them is estopped from claiming the true line; that evidence of an agreed boundary must disclose a valid preexisting agreement, and, to be valid, that agreement must have been based on a doubtful boundary line. The factual situation in that case is quite similar to the facts here related. It was also there held, at page 133, that any inference of a doubtful boundary: ". . . will not prevail against the proved fact to the contrary, —namely, that there was no question or doubt or dispute between both parties over the boundary." (Citing *Clapp* v. *Churchill*, 164 Cal. 741, 746 [130 P. 1061].) However, in *Mello* v. *Weaver*, 36 Cal.2d 456 [224 P.2d 691], it was held that a dispute or controversy as to the location of a boundary may be evidence of the existence of a doubt or uncertainty as to its location, but is not essential to the validity of an agreement settling an *uncertain* boundary. In *Clapp* v. *Churchill*, 164 Cal. 741, 745 [130 P. 1061], it is stated that the doctrine of an agreed boundary line: ". . . rests fundamentally upon the fact that there is, or is believed by all parties to be, an uncertainty as to the location of the true line. When that uncertainty exists, or is believed by them to exist, they may amongst themselves by agreement, fix the boundary line, and that agreement will bind all the consenting parties."

In *Huddart* v. *McGirk*, 186 Cal. 386, 388 [199 P. 494], there was testimony that the parties, in conversation, agreed that a certain ditch was the boundary. The court said: "This is a very different thing from fixing a disputed or doubtful boundary, and if in fact the understanding of the parties as to the location of the true line was in error, they are not bound by their mistaken understanding." See also *Pedersen* v. *Reynolds*, 31 Cal.App.2d 18, 28 [87 P.2d 51]; *Janke* v. *McMahon*, 21 Cal.App. 781 [133 P. 21]; *Garrett* v. *Cook*, 89 Cal. App.2d 98 [200 P.2d 21]. In *Lusk* v. *Krejci, supra,* 187 Cal.App.2d 553, it was held that the doctrine of agreed boundary line did not apply where a wall was constructed by plaintiff and the testimony showed that the parties never intended the wall to serve as a boundary, and the record was devoid of any evidence of a disagreement or uncertainty between coterminous owners as to the location of the boundary line.

The agreement, as here reflected by the evidence, indicates that the parties were desirous of building a fence and the idea was that it should be built on what they believed was the boundary line. The validity of an agreement fixing a boundary line rests upon the belief and understanding of both parties that they are establishing the true boundary line between their properties. Such intent must be not merely to mark the true line, but also to accept the marked line as the true boundary. And while application of the doctrine of agreed boundaries is not nullified by the fact that adjoining owners never intended to claim anything beyond the true line, mere acquiescence in what adjoining owners mistakenly believe to be the true line, without any notion on their part of fixing a disputed or uncertain boundary, does not amount to an agreement fixing a disputed or uncertain boundary line. Nor are the parties concluded where they agree on a temporary line, and not under an agreement that it should be the true line. Where, under such circumstances, coterminous proprietors are in possession of land under a mutual mistake as to the division line, such possession has no effect upon their legal rights, nor is it adverse or conclusive against the assertion of any existing right based upon the true title. (8 Cal.Jur.2d § 36, pp. 759-760.)

 "A fence may, of course, establish or mark the true boundary line between adjoining landowners and constitute an agreed boundary, when it is erected or maintained in circumstances rendering applicable the doctrine of agreed boundaries." (8 Cal.Jur.2d § 43, pp. 767-768.) See also *Vowinckel* v. *N. Clark & Sons,* 217 Cal. 258 [18 P.2d 58] ; *Park* v. *Powers,* 2 Cal.2d 590 [42 P.2d 75].

 "A fence cannot be considered an agreed boundary when there was no uncertainty as to the location of the true boundary at the time of its construction, as where the stakes of the original survey establishing the corners of the two tracts were in place at the time of the construction of the fence. And where a boundary fence is built on what the parties suppose to be the true line, and there is no dispute, and it is not known that there is any uncertainty, the establishment of a boundary by implied consent and acquiescence does not follow therefrom." (8 Cal.Jur.2d § 44, pp. 769-770.)

See also *Janke* v. *McMahon, supra,* 21 Cal.App. 781, where it was held that the fact that an accurate survey is possible is not conclusive of the question whether a doubt exists as to the location of a boundary; the doubt may arise from the

circumstances surrounding the parties at the time an agreement as to the boundary line was deemed to have been made, and if, in good faith, the parties resolve their doubts by fixing the location of the common boundary, it will be considered the boundary called for in the deed. (*Ball* v. *Harder*, 167 Cal. App.2d 168 [334 P.2d 84].) A fence is not necessarily indicative of an agreed boundary. (*Chandler* v. *Hibberd*, 165 Cal. App.2d 39, 48 [332 P.2d 133].) ▮▮▮ The court may infer that there was an agreement between coterminous owners ensuing from uncertainty or a dispute, from the long-standing acceptance of a fence as a boundary between their lands. (*Ernie* v. *Trinity Lutheran Church, supra*, 51 Cal.2d 702, 703.) However, this inference arises from long-standing acceptance, at least during the limitation period, and is not controlling where there is direct evidence on the subject. (*Clapp* v. *Churchill, supra*, 164 Cal. 741, 746.) Here, we have a use much less than the limitation period, and the testimony of the parties to the agreement. Accordingly, no inference of uncertainty or dispute should be applied. ▮▮▮ Some jurisdictions appear to require an actual dispute or controversy, but it appears that in California no dispute in the sense of a quarrel is necessary; uncertainty or doubt is enough. (*Moniz* v. *Peterman*, 220 Cal. 429 [31 P.2d 353]; *Price* v. *De Reyes*, 161 Cal. 484 [119 P. 893]; *Martin* v. *Lopes*, 28 Cal.2d 618 [170 P.2d 881].) Nor is it necessary that the uncertainty appear from the deed or that an accurate survey be impossible. (*Mello* v. *Weaver, supra*, 36 Cal.2d 456, 460.) ▮▮▮ But where there is no uncertainty, the oral agreement is invalid. In such a case it would not be the settlement of a boundary but a transfer of land, and invalid under the statute of frauds. This is true, for example, where the parties are mistaken as to the true boundary and merely acquiesce in the wrong boundary under such mistake. (*Pedersen* v. *Reynolds, supra*, 31 Cal.App.2d 18; *Huddart* v. *McGirk, supra*, 186 Cal. 386; *Lewis* v. *Ogram*, 149 Cal. 505 [87 P. 60, 117 Am.St.Rep. 151, 10 L.R.A. N.S. 610].) In *Pra* v. *Bradshaw*, 121 Cal.App. 2d 267, 269 [263 P.2d 52], it is said:

"There had been only a mistaken acquiescence in what was believed to be the true boundary. . . . such acquiescence by respondents in a wrong boundary is considered in both law and equity as a mistake and either party is free to claim the true line."

(*Meacci* v. *Kochergen*, 141 Cal.App.2d 207 [296 P.2d 573]; 2 Witkin, Summary of Cal. Law, § 48, p. 902.) Witkin,

in his article, states that the *Clapp* case and similar cases were distinguished in *Martin* v. *Lopes, supra,* 28 Cal.2d 618, as follows:

"(1) If the parties, or one of them, *knows* that the agreed line is not the true line, there is no uncertainty, and the agreement is void. (2) If neither party knows where the true line is, the essential element of uncertainty is present and the agreement locating the boundary is binding, even though the parties *mistakenly believe* they have placed it on the true line and do not intend to claim except in accordance with the true line. Hence the boundary was held to have been settled where the parties jointly employed a surveyor and assisted him in locating the line, and thereafter treated that line as the boundary." (Citing 11 Stan.L.Rev. 725.)

The only question remaining then, in view of the findings of the trial court, is whether there is any substantial evidence of uncertainty or doubt, within the meaning of those terms, as to the boundary line at the time of the claimed agreement. (*Mello* v. *Weaver, supra,* 36 Cal.2d 456, 460.)

The deeds were not produced in evidence and we are unable to say that there was or was not any uncertainty in respect to the description. (*Williams* v. *Barnett,* 135 Cal.App.2d 607 [287 P.2d 789] ; *Madera School Dist.* v. *Maggiorini,* 146 Cal. App.2d 390 [303 P.2d 803].)

In *Ernie* v. *Trinity Lutheran Church, supra,* 51 Cal.2d 702, 708, it is said that it is not required that the true location be absolutely unascertainable, that an accurate survey from the calls in the deeds be possible, or that the uncertainty should appear from the deeds. The line may be founded on a mistake. (Citing *Nusbickel* v. *Stevens Ranch Co.,* 187 Cal. 15, 19 [200 P. 651].) In *Janke* v. *McMahon, supra,* 21 Cal.App. 781, 788, the court said, quoting from *Peters* v. *Reichenbach,* 114 Wis. 209 [90 N.W. 184] :

"Where a boundary fence was built on what the parties supposed was the true line, and there was no dispute, and it was not known that there was any uncertainty, an establishment of the boundary by implied consent and acquiescence was not shown."

It is difficult to distinguish some statements in some of these cases in reference to the rule pertaining to mistake or mutual mistake except by reference to the factual background of the particular case. Had the trial court found that there was a mutual mistake and that there was no uncertainty or doubt as to the true line and that there was no intention of the parties

that it was to be the boundary line, such a finding could have been supported. But here we have the testimony of plaintiffs that it was intended that the fence would be built on the boundary line; that McLain showed plaintiffs what he thought was the boundary line and asked if they agreed; that they then proceeded to build the fence on that line; that since they had *established* the line it was not necessary to undergo the expense of having the survey so "we accepted this boundary."

The trial court specifically found that the parties jointly erected a fence along the agreed boundary line, it being the intention of the parties that such fence should mark the boundary line between the respective properties of the parties; that plaintiffs, in reliance upon said agreed boundary line and erection of a fence, entered into and accepted the strip of property lying on the northerly side of said fence and in reliance thereon erected substantial improvements. *Martin* v. *Lopes, supra,* 28 Cal.2d 618, held that lack of knowledge of both parties is sufficient to show "uncertainty." *Mello* v. *Weaver, supra,* 36 Cal.2d 456, uses the word "doubt" as to the common boundary line.

We are bound by the time-honored rule as to weight of evidence (*Tolliver* v. *Lundquist,* 183 Cal.App.2d 816 [7 Cal.Rptr. 192]) and conclude that there is sufficient evidence to support the finding. (*Roberts* v. *Brae,* 5 Cal.2d 356 [54 P.2d 698].)

Judgment affirmed.

Shepard, J., and Coughlin, J., concurred.