[Civ. No. 21386. First Dist., Div. Two. Mar. 16, 1964.]

JAMES R. McCORMICK et al., Plaintiffs and Respondents, v. HARTLEY R. APPLETON et al., Defendants and Appellants.

Hartley R. Appleton, in pro. per., and George Olshausen for Defendants and Appellants.

Di Leonardo, Blake, Kelly, Aguilar & Leal and Stanley F. Leal for Plaintiffs and Respondents.

TAYLOR, J.—This is an appeal by defendants, Hartley and Esther Appleton, in a dispute between the owners of adjacent lots in the Russelhurst subdivision of Santa Clara County. The plaintiffs, James and Donna McCormick, filed their complaint seeking injunctive relief and damages for

trespass to real and personal property, alleging the wilful and wanton destruction of a boundary fence constructed in 1958 by the prior owner, R. Heaviside. The defendants answered, denying the allegations of the complaint and cross-complained for damages for trespass by the McCormicks' water main and for a determination of the common boundary in accordance with a 1961 survey. After a trial without a jury, the court denied relief on the cross-complaint, determined that the agreed boundary was along the 1958 fence line, enjoined the defendants from coming on the land of plaintiffs, and awarded compensatory damages of $350 and exemplary damages of $500 to the plaintiffs. The appellants contend that the trial court erred in its application of the law, its findings of fact, and in the award of damages.

Viewing the record most favorably to the judgment, as we must on appeal, the facts are as follows: On February 20, 1959, the respondents acquired lots 34 and 34A from Mr. and Mrs. R. Heaviside who had built a home on lot 34 in 1957, with a driveway on lot 34A. By a grant deed dated October 15, 1958, the appellants had acquired lot 38 from Mr. and Mrs. S. Crowe. The appellants' lot was unimproved and shared a boundary of approximately 137 feet with the eastern-most portion of the south line of the respondents' property. Because of discrepancies between the lots and the subdivision map, both the Heavisides and the Crowes were uncertain about the location of the common boundary of their properties. Each independently ran survey lines from different points of beginning and arrived at certain compatible results as to the delineation of the boundary. Thereafter, they orally agreed on the common boundary line. In reliance on this determination and the boundary agreement, Heaviside constructed a split rail fence all around his property and made other improvements, including the planting of trees. The split rail fence extended about 121 feet on the common boundary with the Crowe property leaving an opening at one end to permit access to Crescent Road.

In the summer of 1961, several owners in the area discussed a jointly financed survey to be made by M. Wolff. The respondents preliminarily agreed to share the cost of the survey but in September 1961 told Wolff to stop the survey on their property. The respondents rejected the projected preliminary results because the Wolff line extended about 4 feet into their bedroom. The majority of the other owners also rejected the Wolff survey and its proposed realignment of

property lines. The appellants and a few others were in the minority which was willing to realign boundaries as suggested by Wolff.

On October 29, 1961, when the Wolff survey had been completed but not yet filed or accepted by the county, the respondents returned from a brief shopping expedition to find the appellant, Hartley Appleton, and two other men destroying the fence. The appellant, Hartley Appleton, testified that the Wolff survey showed the fence to be on his property and that he merely pushed it over because it was rotten and falling down anyway.

The court found that the prior owners, being uncertain of the true boundary, had agreed on the common boundary along the fence line; that in reliance thereon, Heaviside had constructed the fence and made other improvements;[1] that from then until the present dispute, the owners of the contiguous parcels of property treated the fence line as the true boundary; that therefore Appleton's entry and destruction of the fence was a trespass. The court further found that the respondents had not agreed to be bound by the Wolff survey and that the respondents' water main did not trespass on the land of the appellants.

The appellants first contend that the trial court erred in finding an agreed boundary binding on successors in title because there was no acquiescence for the statutory time of five years (Code Civ. Proc., § 325. The requirements of proof of an agreed boundary are uncertainty as to the true boundary line, an agreement between the coterminous owners fixing the line, and acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations, or under such circumstances that substantial loss would be caused by a change in its position (*Ernie* v. *Trinity Lutheran Church,* 51 Cal.2d 702, 707 [336 P.2d 525]).

Thus, while the general rule requires that the period of acquiescence in the agreed boundary must be equal to the period of the statute of limitations (*Silva* v. *Azevedo,* 178 Cal. 495 [173 P. 929]), an exception has long been recognized where substantial loss would result unless the agreement were upheld (*Young* v. *Blakeman,* 153 Cal. 477, 482 [95 P.

---

[1]Although not expressly challenged by the appellants, the court's finding that Mr. Heaviside constructed his home in reliance on the boundary agreement is not supported by the evidence. The house was built in 1957; the boundary agreement was made in the summer of 1958.

888]). Here, the change suggested by the appellants would result in the taking of part of respondents' home and improvements made subsequent to the establishment of the agreed boundary and the equitable exception was properly applied. In the recent case of *Kirkegaard* v. *McLain*, 199 Cal.App.2d 484 [18 Cal.Rptr. 641], the court invoked the equitable exception and found an agreed boundary where the boundary fence had stood for a shorter period than provided by the statute of limitations and the loss to the owner would have been much less severe than in the instant case. We conclude that there was sufficient evidence to support the court's finding of an agreed boundary.

 The appellants argue that the trial court failed to find that the fence had been built before the appellants purchased their land. The clear import of the finding concerning the boundary agreement between the previous owners is that the fence was built before the appellants acquired the property and, although the testimony was conflicting, there was ample evidence to sustain the finding. Heaviside testified that he built the fence with Crowe's lumber before his back injury on August 15, 1958, and the grant deed from Crowe to appellants was dated October 15, 1958.

In any event, a finding on the date of the building of the fence was not essential to the judgment. The evidence was uncontroverted that an agrement between the prior owners establishing the boundary line took place sometime prior to the appellants' acquisition of the property. The agreement fixes the true boundary and when the division line is thus established, it attaches itself to the deeds of the respective parties (*Young* v. *Blakeman, supra*). The crucial date is that of the agreement and not the construction of the fence.

 The appellants claim that it was essential for the court to find whether the Wolff survey agreement superseded the prior boundary agreement between the parties. This subject was properly covered by the finding that the respondents had not agreed to be bound by the findings and determinations of the Wolff survey. The evidence showed that the respondents and other owners in the tract merely consented to the survey and to share the costs. They did not agree to be bound thereby, nor to adjust property lines accordingly. In fact, most of the parties concerned joined the respondents in rejecting the proposed preliminary realignment.

 The court's findings on the effect of the Wolff survey

and that there was an agreed boundary rendered inappropriate appellants' argument that other owners in the tract were necessary parties to the disposition of the action (*Bank of California* v. *Superior Court*, 16 Cal.2d 516 [106 P.2d 879]).

Appellants argue that the court applied an erroneous theory of law in resolving all equities against them. They contend that the true rule is that equity will adjust its decrees to avoid hardships but not to defeat the basic right to have the boundaries readjusted where existing surveys are inaccurate. The answer is that the Wolff survey was not agreed upon by the parties as an accurate readjustment. There was sufficient evidence to find an agreed boundary and appellants failed to show any grounds for relief on their cross-complaint. Appellants do not dispute that the court properly balanced the hardships to avoid running a boundary line through respondents' house, but apparently contend ·that the court should have awarded damages to the respondents in lieu of other equitable relief. We think that under the particular circumstances of this case, and considering the fact that appellants' lot was not improved, the court properly exercised its equitable discretion both as to the result reached and the relief granted.

Finally, we turn to the arguments concerning the award of compensatory and exemplary damages. The appellants contend that the evidence was insufficient to sustain an award of $350 compensatory damages, since the fence was built by Heaviside with lumber given to him by Crowe. The respondents testified that this figure represented the value or replacement cost. The appellants offered no rebuttal testimony. It is well settled that owners of property are qualified to testify to the value thereof, and respondents' opinion was sufficient to sustain the court's finding (*Holt* v. *Ravani*, 221 Cal.App.2d 213 [34 Cal.Rptr. 417]).

The appellants cite Civil Code section 841 to the effect that each coowner is bound equally to maintain the boundary fence unless one of them chooses to let his land lie without fencing, as authority for the proposition that respondents were not the sole owners of the fence and hence were entitled to recover no more than one-half of its value. The trial court properly concluded that this section does not apply where one party wrongfully damages the property of a neighbor by removing a preexisting boundary fence.

As to the award of exemplary damages, the appel-

lants argue that the evidence is insufficient to establish malice or oppression. We cannot agree. Appellant Hartley Appleton testified that he attempted to notify the respondents before taking down the fence by ringing their doorbell; the respondent James McCormick testified that he had no doorbell or any similar device at his home. The respondents used and occupied lots 34 and 34A as a home, while the appellants' lot was unimproved and vacant. In view of these facts and the conduct of the appellant, an attorney at law, in taking down the fence when the Wolff survey had not even been filed with the county, and with knowledge of a quiet title action pending between the parties, the court could easily infer sufficient malice and oppression to warrant the exemplary damages.

Judgment affirmed.

Shoemaker, P. J., and Agee, J., concurred.

A petition for a rehearing was denied April 15, 1964, and appellants' petition for a hearing by the Supreme Court was denied May 13, 1964.