[No. B232570. Second Dist., Div. Six. Sept. 6, 2012.]

KEITH MARTIN et al., Plaintiffs and Respondents, v.
ALEXANDRA VAN BERGEN et al., Defendants and Appellants.

**COUNSEL**

Kinman & Curry, Barry Alan Kinman and Marilyn P. Curry for Defendants and Appellants.

Ogden & Fricks, Roy E. Ogden and Shae A. Luchetta for Plaintiffs and Respondents.

**OPINION**

**GILBERT, P. J.**—This case arises from a boundary dispute. Defendants rely on the doctrine of boundary by agreement in defense of plaintiffs' quiet title action. Missing from defendants' case, among other things, is an essential element—an agreement. We affirm.

## FACTS

Plaintiffs Keith Martin, Tamara Martin and Adam Vali (collectively Martin) own a 240-acre parcel of land in Paso Robles. The property is improved with a residence and a vineyard. Martin acquired the property in 2005.

Alexandra Van Bergen and Layth Alsudiary (collectively Van Bergen) own a contiguous parcel consisting of a residence and an almond orchard. Alsudiary obtained title to the parcel in 1997. Van Bergen was added to the title in 2005.

The common boundary between the parcels is approximately 1,300 feet long. It runs along the eastern edge of the Martin's parcel and the western edge of Van Bergen's parcel. A fence runs over Martin's parcel for at least part of the 1,300 feet parallel to the boundary. The area between the boundary and the fence is planted with almond trees. In other words, Van Bergen's almond orchard encroaches onto Martin's parcel.

Ruth Scovell testified she moved with her family onto Van Bergen's parcel in 1945, when she was 15 years old. In 1947, her family planted the almond orchard that exists today. Her family was assisted by Martin's predecessor-in-interest, who reportedly performed survey work for the Army and possessed some survey equipment.

At the time the Scovells planted the almond orchard, there was an existing cattle fence where the present fence is located. They replaced the cattle fence with a deer fence. They worked with their neighbor in doing so. Scovell did not remember her neighbor using survey equipment to locate the fence. The new fence simply replaced the old fence. Scovell never heard any disagreements with her neighbor about the fence. As far as Scovell knew, there was no uncertainty between the neighboring property owners as to the location of the boundary. Both property owners were certain the fence was located on the boundary.

In 2005, three surveys were performed to establish the boundary between the parcels. Surveys by EMK & Associates (EMK) and Daniel J. Stewart & Associates (Stewart) came to the same conclusion, that the orchard encroached onto Martin's parcel. A survey by Vaughan Surveys, Inc. (Vaughan), placed the boundary in a different location. The existing fence is not on any of the surveyed boundaries.

Dan King, owner of EMK, testified that his and Stewart's surveys were accurate. He stated the Vaughan survey is inaccurate because it is based on a mistaken identification of the south quarter corner of section 13. Vaughan was deceased at the time of trial.

John Sanders, a licensed surveyor, testified as Van Bergen's expert. He said he had no opinion of the accuracy of any of the three surveys. He said he could, if asked, conduct his own survey, and accurately determine the boundary between the parcels. He was not, however, asked to do so. He testified that because all three surveys had been recorded, they create an inherent uncertainty about the true boundary.

The boundary established by the EMK and Stewart surveys would result in a loss of 8 to 10 percent of the almond orchard. The orchard produces approximately 400 pounds of almonds a year, of which only 25 percent are sold commercially. Thus, the relocation of the boundary would result in a loss to Van Bergen of a small percentage of her orchard, producing 40 pounds of almonds annually.

The trial court concluded Van Bergen did not establish the fence as the boundary under the doctrine of boundary by agreement. The court found that the EMK and Stewart surveys accurately establish the true boundary, and that the Vaughan survey is in error. The court quieted title in Martin based on the boundary established by the EMK and Stewart surveys.

## DISCUSSION

### I.

Van Bergen contends the undisputed facts compel the conclusion that a boundary by agreement was created.

■ Our Supreme Court discussed the doctrine of boundary by agreement in *Bryant v. Blevins* (1994) 9 Cal.4th 47 [36 Cal.Rptr.2d 86, 884 P.2d 1034]. It said, "Although the agreed-boundary doctrine is well established in California, our case law has recognized that the doctrine properly may be invoked only under carefully specified circumstances. As this court stated in *Ernie* v. *Trinity Lutheran Church*[ (1959)] 51 Cal.2d 702, 707 [336 P.2d 525]: 'The requirements of proof necessary to establish a title by agreed boundary are well settled by the decisions in this state. [Citations.] The doctrine requires that there be [1] an uncertainty as to the true boundary line, [2] an agreement

between the coterminous owners fixing the line, and [3] acceptance and acquiescence in the line so fixed for a period equal to the statute of limitations or under such circumstances that substantial loss would be caused by a change of its position.' (*Ibid.*) [¶] In the years since we reiterated in *Ernie* v. *Trinity Lutheran Church, supra,* 51 Cal.2d 702, the requirements of the agreed-boundary doctrine, numerous Court of Appeal decisions have held that the doctrine should not be applied broadly to resolve boundary disputes where there is no evidence that the neighboring owners entered into an agreement to resolve a boundary dispute and where the true boundary is ascertainable from the legal description set forth in an existing deed or survey. [Citations.]" (*Id.* at p. 55.)

In *Bryant,* the parties assumed that a long-standing fence marked the boundary between their parcels. A survey, however, disclosed that the fence was not on the true boundary. Plaintiffs, on whose land the fence encroached, sued to quiet title to the area between the fence and the true boundary. Defendants claimed the disputed area rightly belonged to them under the theory that the fence marked an agreed boundary. The trial court found there was no evidence of any dispute leading to an agreement that the fence marked the boundary. Nevertheless, the court concluded the long-standing acceptance of the location of the fence supported the application of the agreed boundary doctrine. The Court of Appeal affirmed. Our Supreme Court reversed.

In reversing, our Supreme Court approved Court of Appeal decisions holding that the doctrine of agreed boundary should not be applied where there is no evidence that the neighboring owners entered into an agreement to resolve a boundary dispute and where the true boundary is ascertainable from a legal description contained in an existing deed or survey. (*Bryant v. Blevins, supra,* 9 Cal.4th at p. 55.) These decisions show deference to accurate legal descriptions and a reluctance to allow such descriptions to be invalidated by implication through reliance on boundaries created by fences, foliage, or other inexact means of demarcation. (*Ibid.*)

*Bryant* cited *Armitage v. Decker* (1990) 218 Cal.App.3d 887, 900 [267 Cal.Rptr. 399], for the proposition that, " 'proof of the acquiescence in the existence of a fence without evidence of an agreement to take the fence as a boundary is not sufficient to establish an agreed boundary.' [Citation.]" (*Bryant v. Blevins, supra,* 9 Cal.4th at p. 56.) In *Armitage,* the appellate court stated the plaintiff failed to establish his case because he " 'offered no direct proof that the fence had been built to resolve adjoining owners' uncertainty as to the boundary between their lands.' " (*Ibid.*; see *Armitage, supra,* at p. 901.)

■ Van Bergen argues *Bryant* is distinguishable because there an uncontradicted survey established the true boundary; whereas here, the boundary was rendered ambiguous by the recordation of conflicting surveys. The argument misses the point. The question is not whether the boundary is ambiguous, but whether a survey can accurately locate the true boundary. If a survey derived from a deed or other legal document can accurately locate the boundary, the policy favoring certainty in real property title militates against establishing a boundary by agreement. Here even Van Bergen's own expert conceded that, if asked, he could accurately survey the boundary between the properties.

■ Nor is there " 'direct proof that the fence had been built to resolve adjoining owners' uncertainty as to the boundary between their lands.' " (*Bryant v. Blevins, supra*, 9 Cal.4th at p. 56.) The only evidence is that the existing fence was constructed in its present location because that is where a previous fence had been located. There is no evidence why the previous fence had been built in that location. It is true the neighboring property owners here long acquiesced in the location of the fence. But *Bryant* makes clear that such acquiescence is not sufficient to prove an agreed boundary. There must be evidence of an actual agreement.

Van Bergen claims she could suffer substantial loss if the boundary is now changed. She argues that an agreed boundary, even one based on mutual mistake, must control if reverting to the true boundary would cause substantial loss. She relies on *Kirkegaard v. McLain* (1962) 199 Cal.App.2d 484 [18 Cal.Rptr. 641]. There the court determined that the lack of knowledge on the part of adjoining landowners as to the true location of the boundary is sufficient " 'uncertainty' " to support a boundary by agreement. (*Id.* at p. 494.)

■ Van Bergen's faith in *Kirkegaard* does not elicit fear and trembling in plaintiffs. First, the issue discussed in *Kirkegaard* is the meaning of " 'uncertainty' " for the purposes of the doctrine of boundary agreement. The case does not discuss substantial loss. A case is not authority for issues not discussed therein. (*Contra Costa Water Dist. v. Bar-C Properties* (1992) 5 Cal.App.4th 652, 660 [7 Cal.Rptr.2d 91].)

■ Second, if *Kirkegaard*'s conclusion that mutual mistake is sufficient to show "uncertainty" was ever good law, it is no longer. *Bryant* requires "deference to the sanctity of true and accurate legal descriptions." (*Bryant v. Blevins, supra*, 9 Cal.4th at p. 55.) Thus, a boundary is not uncertain if it can be ascertained by an accurate survey.

■ Third, in *Kirkegaard*, the parties reached an agreement that a fence would mark the boundary. Here there is no evidence of such an agreement.

Finally, the trial court here found that Van Bergen would not suffer substantial loss. Moving the fence to the true boundary would result in the loss of 40 pounds of almonds annually, only 25 percent of which are sold commercially. Van Bergen provides no basis for overturning the trial court's finding.

## II.

Van Bergen contends all of Martin's claims are barred by the statute of limitations.

One of the Martin plaintiffs testified that he believed the fence did not mark the true boundary at the time a real estate agent showed him the property. The Martin deed was recorded on October 17, 2005, and Martin did not file his complaint until more than four years later on October 22, 2009.

■ Van Bergen's amended answer to the complaint alleged plaintiffs' claims are barred by the statute of limitations pursuant to Code of Civil Procedure section 315 et seq.[1] Section 315 is not relevant. It concerns an action by the People of the State of California for rights relating to real property.

On appeal, Van Bergen argues the action is barred by section 343. Van Bergen did not plead that section. She points, however, to her trial brief which raises section 343 as a bar.

■ There are two ways to properly plead a statute of limitations: (1) allege facts showing that the action is barred, and indicating that the lateness of the action is being urged as a defense and (2) plead the specific section and subdivision. (*Brown v. World Church* (1969) 272 Cal.App.2d 684, 691 [77 Cal.Rptr. 669].) Here Van Bergen did neither. She cites no authority for the proposition that raising the defense in the trial brief is sufficient. The failure to properly plead the statute of limitations waives the defense. (*Mysel v. Gross* (1977) 70 Cal.App.3d Supp. 10, 15 [138 Cal.Rptr. 873].)

■ In any event, section 343 does not apply. It is a general limitations statute that applies when no other limitations statute is applicable. Section 318

---

[1] All further statutory references are to the Code of Civil Procedure.

provides for a five-year limitation on an action to recover real property or possession thereof. The essence of Martin's action is for possession of real property.

The judgment is affirmed. Costs on appeal are awarded to respondent.

Yegan, J., and Perren, J., concurred.